No. 22,301.

SAM H. ELLIOTT, *Appellant and Appellee,* v. THE CRYSTAL
SPRINGS OIL COMPANY, et al., (THE CRYSTAL SPRINGS OIL
COMPANY and THE CARTER OIL COMPANY, *Appellees and
Appellants*).

#### SYLLABUS BY THE COURT.

1. OIL AND GAS LEASE—*Action for Cancellation—Attorney's Fees and
   Statutory Damages.* In an action to obtain cancellation of record of
   an oil and gas lease, a plaintiff is entitled to attorney's fees and to
   statutory damages of $100, under section 4994 of the General Statutes
   of 1915, where it was the duty of the holder of the lease to discharge it
   of record and he failed to do so, if the plaintiff lessor, at least twenty
   days before beginning the action, made a demand upon the holder of
   the lease to discharge it of record as provided by section 4995 of the
   General Statutes of 1915.

2. CANCELLATION OF OIL AND GAS LEASE—*Procedure Optional.* It is not
   necessary for the lessor of a gas and oil lease to follow the procedure
   permitted by section 4992 of the General Statutes of 1915 to clear his
   record title of a gas and oil lease before beginning his statutory action
   (§ 4994) to obtain a judgment cancelling the lease, nor is compliance
   with that procedure a prerequisite to the allowance of attorney's fees
   and statutory damages.

3. SAME—*Value of Attorney's Services—Proof.* Where attorney's fees
   are allowed by statute to the prevailing party, the trial court should
   make a reasonable allowance therefor; and if no formal proof of the
   value of such service is presented, the court should allow a reasonable
   sum based upon its judicial notice of the services performed and upon
   its own general knowledge of the value of such services.

4. SAME—*Terms of Lease—Cancellation Ordered.* A lease which was to
   endure as long as gas or oil was produced on the premises, and which
   also provided that "sixty days after both producing and drilling opera-
   tions cease this lease to be void and surrendered for cancellation," is
   terminated by its specific terms, and the lessor is entitled to judgment
   cancelling it when it is admitted that production and drilling on the
   leased property have ceased for over seven months because no market
   was available, nor in prospect within a reasonable time, for the sale
   of gas developed in wells already drilled on the property by the lessee.

Appeal from Cowley district court; OLIVER P. FULLER, judge.
Opinion filed February 7, 1920. Reversed on the appeal;
affirmed on the cross appeal.

*W. P. Hackney,* and *L. D. Moore,* both of Winfield, for the
appellant.

Elliott v. Oil Co.

*Charles W. Roberts,* of Winfield, *William H. England,* and *Felix C. Duvall,* both of Ponca City, Okla., for the appellees.

The opinion of the court was delivered by

DAWSON, J.: The plaintiff brought this action to cancel an oil and gas lease on his property. He charged the defendants with failure to pay rent, with nonproduction, abandonment of producing operations, and failure of defendants to drill "off-set wells" as provided in the lease. Plaintiff prayed also for an attorney's fee and $100 as statutory damages.

Issues were joined, and the cause came on for trial, but after hearing the opening statements of counsel for plaintiff and defendants and the evidence of one witness for defendant who explained why the gas contained in one well on the property was not marketed, the court gave judgment for plaintiff cancelling the lease; but denied to plaintiff the statutory damages and attorney's fee because of his noncompliance with the provisions of section 4992 of the General Statutes of 1915.

Both parties appeal. Plaintiff's grievance is the nonallowance of his fees and damages. Defendants' grievance is the cancellation of their lease.

First, as to plaintiff's appeal: The first statute relating to the release of oil and gas leases was enacted in 1905. (ch. 314.) It merely made it the duty of a lessee of a forfeited lease to cause it to be released of record, and gave the lessor a right of action (which he already possessed in law or equity) to obtain such a release, if the lessee failed to comply with that statute.

In 1909, a new statute was enacted (ch. 179) which repealed the act of 1905, and provided (§ 1) that it should be the duty of the lessee of a forfeited lease to discharge it of record without cost to the lessor. The act also provided (§ 2) that if the lessee failed to execute a release, the lessor might sue to obtain such release, and in such action he would be entitled also to attorney's fees and damages in the sum of $100. This section also provided for additional damages, (but see *Grain Co. v. Railway Co.,* 105 Kan. 272, 275, 276, 182 Pac. 405.) Section 3 provided that at least twenty days before this statutory action to obtain a release should be instituted, the lessor should make a demand upon the lessee to discharge the lease of record.

Section 2 and section 3 of the act of 1909 are still in force and appear in the General Statutes of 1915 as sections 4994 and 4995.

Section 1 of the act of 1909 (Gen. Stat. 1909, § 3921) was amended and elaborated in 1915 (ch. 228) by an act of two sections which cover the subject of forfeitures of leases, notice of forfeitures, duties of the register of deeds in relation to the record, and the legal effect of affidavits, etc., filed in his office. These two sections of the act of 1915 appear in the General Statutes of 1915 as sections 4992 and 4993. Neither of them confers a cause of action to have a lease discharged of record. That cause of action is conferred by the still existent section 2 of the act of 1909 (Gen. Stat. 1915, § 4994), and as a condition precedent to the statutory right to attorney's fees and $100 damages in such action a demand upon the holder of the lease for its discharge of record must be made twenty days before the action is begun.

It is conceded that this demand was made upon the defendants before the action was begun, but the trial court ruled that the act of 1915 imposed an additional prerequisite to the granting of attorney's fees and damages.

Counsel for plaintiff: "We now offer to prove our right to attorney fees."

By the Court: "I think prior to the 1915 statute you would have been entitled to attorney fees, but after the 1915 statute Mr. Elliott has to follow that statute in order to be allowed such fees. I think it is immaterial. Of course, if you want to make your offer go ahead, but I think the whole thing is immaterial."

Counsel for Plaintiff: "The plaintiff offers to prove . . . the value of the legal services rendered plaintiff in this case to be worth $1500.00." . . . [Objection.]

By the Court: "The objection is sustained for the reason that it is immaterial under the issues."

Counsel for Plaintiff: "The plaintiff now asks for $100.00 statutory damages." . . . [Objection.]

By the Court: "It is clear enough to me that the 1915 statute is supplemental to the 1909 statute, and in order to get within the 1909 statute you must comply with the 1915 statute, I will render judgment for plaintiff on the statements and pleadings cancelling the lease, and refuse damages and attorney fees."

We are constrained to differ with the learned trial court on this proposition. The first section of the act of 1915 (Gen.

Stat. 1915, § 4992), like the act of 1905, and the first section of the act of 1909, made it the duty of the holder of a forfeited lease to release it of record.  But as to all else in the act of 1915 (Gen. Stat. 1915, §§ 4992, 4993) the subject covered has to do with a permissive procedure to show the status of the lease on the records of the register of deeds, and for clearing the lessor's title of the apparent cloud or encumbrance of such lease.  The act of 1915 does not confer the cause of action, nor does it affect the cause of action.  The statutory cause of action remains as it was enacted in 1909.  (Gen. Stat. 1915, §§ 4994, 4995.)

It thus appears that the plaintiff is entitled to the statutory damages of $100 allowed by section 4994.  And this conclusion will necessitate a partial reversal of the judgment.

Is there any difficulty about ordering an allowance for attorney's fees?  The plaintiff offered to prove the value of the attorney's services, but he did not prove that value.  The evidence was excluded—erroneously, no doubt, but yet excluded. What was the proper course to pursue?  It was to produce such proof orally or by affidavits in support of his motion for a new trial.   (Civ. Code, § 307; *Scott v. King,* 96 Kan. 561, Syl. ¶ 4 and citations, 152 Pac. 653; *Smith v. Smith,* 104 Kan. 629, 631, 180 Pac. 231.)

But a failure to make proof of the value of an attorney's services stands on a different footing from an ordinary issue of fact, about which the court knows nothing until the evidence is submitted.   Judges are none the less lawyers because they happen to be on the bench and temporarily out of the practice of their profession.   They usually know what a lawyer's services are worth, and the opinion evidence of witnesses touching the value of such services is often not very helpful and seldom controlling.   The trial judge knew without formal evidence that the plaintiff's counsel had earned something, that some allowance should be made to pay them; and he refrained from making some reasonable allowance, not for want of evidence, but because of what he understood to be the effect of the act of 1915.

In this jurisdiction it is not unusual for our courts, where attorney's fees are a lawful charge, to allow reasonable attorney's fees without formal proof or in disregard of proof of the value of the attorney's services.   In such cases the

allowance is based upon the court's own information of what service the attorney has performed, and upon the court's discretionary judgment of what such services are worth. (*Bentley v. Brown,* 37 Kan. 14, 14 Pac. 434; *Noftzger v. Moffett,* 63 Kan. 354, 65 Pac. 670, *The State v. Porter,* 76 Kan. 411, 91 Pac. 1073; *The State v. Glass,* 99 Kan. 159, 162, Syl. ¶ 7, 160 Pac. 1145.)

In this case the court should have made some allowance for attorney's fees. It should still do so. Such allowance should be based upon the trial court's judicial notice of the attorney's services performed in that court, but should not include any allowance for services rendered in this appeal. (*Mortgage Co. v. Insurance Co.,* 97 Kan. 190, 155 Pac. 17.)

Second, as to defendant's grievance: Trial court cancelled the lease. This was a hardship on appellants. They had spent large sums of money in prospecting, and had drilled three or four wells, one of which would produce a large volume of gas, if a market could be obtained for it. Unfortunately, however, aside from some small sales to drilling outfits, the lessees have been unable to sell the gas. A large pipe line crosses the country near by, but it is a high-pressure line, and it is impossible to force the gas from the lessees' wells into that trunk line without a pressure pump which could be constructed only at ruinous expense. And so all development and production ceased upon this leased property several months before this action was begun.

It was not suggested either in the trial court nor here that further forbearance on the part of the lessor would give the lessees any hopeful chance of finding a market for the gas. The lessees have simply quit, and while the courts always give a willing ear to any rational theory for avoiding a forfeiture, we can discern no way the trial court could have avoided a declaration of forfeiture in this case. The contract of lease provided:

"It is agreed that this lease shall remain in force for a term of five years from this date and as long thereafter as oil or gas, or either of them is produced from said land by the party of the second part, . . .

"Sixty days after both producing and drilling operations cease this lease to be void and surrendered for cancellation."

The contract did not provide for the contingency that gas wells might be developed which would be unproductive for

want of a market.   As the matter stands, the lessor's property is no more productive to him than if the lessee had found no gas.   And while the, lessees have expended much money to drill these gas wells, the wells are of no present or prospective value to them.   In such a situation the lessor seems to be entitled to a termination of the lease under the plain text of the contract. Cleared of this lease, it may be possible for the lessor to make other arrangements to secure production.

The judgment on the plaintiff's appeal is reversed, and the trial court is instructed to allow to plaintiff the statutory damages of $100 and a reasonable attorney's fee.   The judgment of the trial court on defendants' cross appeal is affirmed.