## PRYOR MOUNTAIN OIL & GAS CO. vs. CROSS

(No. 1062, February 5th, 1924; 222 Pac. 570.)

FRAUDS, STATUTE OF—DEFENSES—MINES AND MINING—OIL AND GAS
LEASE—FORFEITURE.

1. In a suit by assignee of an oil and gas lease for possession of the lands, defendant lessor could not assert that the assignment was invalid as not complying with the statute of frauds; that question being material only as between the immediate parties to the assignment.

2. An oil and gas lease, providing that it should remain in force until August 15, 1918, and as long thereafter as either substance was produced, etc., and should production be had, lessee should market the product "within six months from discovery, or at any time mutually agreed upon," did not expire by its terms on failure to market the product within six months from the completion of a well which produced gas in paying quantities, since the "marketing" and "producing" clauses were independent, especially where the marketing provision contained no forfeiture clause.

3. Lessee of oil and gas cannot delay an unreasonable time to market gas after discovery, particularly where the territory is being drained, and, if he does so, equity will favor foreiture as promoting justice.

4. Where lessor did nothing to indicate his intention to insist upon forfeiture of an oil and gas lease for failure to market the gas within six months after discovery, until assignee bought the lease in good faith, paid the purchase price, and informed the lessor that he was ready and willing to perform the covenant to market the gas, forfeiture would be denied, especially in the absence of a forfeiture clause.

ERROR to District Court, Big Horn County, P. W. METZ, Judge.

Action by A. B. Cross against Pryor Mountain Oil & Gas Company to recover possession of land. There was a judgment for plaintiff and defendants bring error.

*E. E. Enterline, Johnston, Coleman & Johnston* for plaintiff in error.

Oil and gas leases are construed most strongly against the lessee, Thornton, 3rd. Ed. 251; Archer L. P. 6; defendant in error is without title; the lease conveyed an interest to lessee, Williamson v. Jones (W. Va.) 19 S. E. 436; Lawson v. Hirchner, (W. Va.) 40 S. E. 344; Wilson v. Yost, (W. Va.) 28 S. E. 781. An oil lease must be in writing, 4719 C. S., Thornton, 329. It conveys an interest in land, Beckett Co. v. Backer, 178 S. W. 1084; Ramage v. Wilson, 77 N. E. 368; Huff v. McCauley, 91 Am. Dec. 203; Entwhistle v. Henke, 71 N. E. 990; Heller v. Dailey, 63 N. E. 490; Mont. Co. v. Gibson, (Wyo.) 113 Pac. 784; it is within the statute of frauds, Smith v. Perkins, 24 S. W. 722; Kingsley v. Siebrecht, 42 Atl. 249; Chicago Co. v. Mach. Co., 31 N. E. 348; Benton v. Schulte, 17 N. W. 621. Defendant in error is estopped to deny lessee's interest, 10 R. C. L. 699, 21 C. J. 1226; Wilcoxson v. Burton, 27 Cal. 228. The lease terminated by failure to market gas within six months. Steelsmith v. Gartlan, 29 S. E. 978; Cyron v. Ridelsperger, 7 P. C. C. Rep. 473. Stipulations as to diligence are binding, Thornton 167. An oral agreement cannot alter terms of a written contract, 29 A. & E. Encl. 824; Emerson v. Slater, 22 How. 28; Swain v. Seamens, 9 Wall. 254; Blood v. Goodrich, 24 Am. Dec. 121. Lease renewals must be in writing, 4622 C. S.; time was of the essence though not specifically stated, Fetter Eq. 279; Garden City Co. v. Maseh, 109 Pac. 686; Brown v. Co., 9 Sup. Ct. 127; Thornton 163; Wilson v. Roots, 10 N. E. 204, 6 R. C. L. 285. The lease was subject to forfeiture, Howarton v. Co., 106 Pac. 47; Island Co. v. Combs, 53 N. E. 452; Gadbury v. Co., 67 N. E. 259; Petro. Co. v. Oliver, 79 S. W. 884; Shenándoah v. Hise, 23 S. E. 303; Petro. Co. v. Coal Co., 18 S. W. 65; Parish Co. v. Bridgewater Co., 42 S. E. 655. Notice of forfeiture was unnecessary, Maxwell v. Todd, 16 S. E. 926, estoppel cannot be based upon a promise as to the future, Eaton Eq. Jr. 171, Pom. Eq. Jr. 3rd Ed. 808, 16 Cyc.

756.  One not knowing legal rights is not estopped to claim forfeiture, Parkey v. Ramsey, 76 S. W. 812; Biddle v. Co., 14 Cal. 279; Turnipseed v. Hudson, 19 Am. Dec. 18; Crabtree v. Bank, 67 S. W. 797; Brant v. Co., 93 U. S. 326, 10 R. C. L. 696.  One setting up estoppel is bound to exercise reasonable diligence, Fourth Bank v. Co., 161 S. W. 1144; Pocahontas v. Browning, 44 S. E. 267, 21 C. J. 1129; one not relying upon silence, statement, acts or admissions cannot claim estoppel, Ford Co. v. Cress, 116 S. W. 710, 21 C. J. 1126; McCormick v. Co., 24 Pac. 1003; Huston v. Peterson, 87 Pac. 1074; Simmons v. Shaft, 138 Pac. 614; Pom Eq. 807; Brant v. Co., supra; Dye v. Crary, 85 Pac. 1038; Henshaw v. Bissell, 18 Wall. 255.  The court erred in finding that plaintiffs had waived performance, Bennecke v. Co., 105 U. S. 355; In re Miller's Co., 106 N. W. 485, 29 A. & E. Encl. 1095.  Waiver must be supported by a valuable consideration, 29 A. & E. Encl. 1097; 40 Cyc. 263.  On the question of estoppel or of waiver, acts of officers of corporations control, 2 Thomp. Corp. 1183, 14-a C. J. 1844, 2 Cook 712, 7 R. C. L. 427; Hartford Co. v. Co., 45 N. W. 351; Trent v. Sherlock, 61 Pac. 650; Franklin v. Co., 141 Pac. 727.  The president alone cannot act, 3 Thomp. 2459; Potts v. Wallace, 13 Sup. Ct. 196; Lewistown Co. v. Brown, 85 Pac. 47, nor the secretary, 8 Thomp. 1513, nor general managers, 3 Thomp. 2459, nor agents, except when acting within the scope of authority, Sanders v. Chartrand, 59 S. W. 95.

C. A. *Zaring* for defendant in error.

The evidence supports the finding that defendant in error owned the lease at the commencement of the action; plaintiffs in error waived a strict performance by their actions, declarations and conduct and are estopped from enforcing a forfeiture, the covenant to market gas within six months is not absolute, but is qualified by the terms of the lease itself, officers and directors of plaintiff in error were active in negotiations for the sale of the gas, but were unsuccessful; there was no notice of a claim of forfeiture; there was

a waiver of strict performance as to marketing gas; no cases are cited involving forfeiture of a lease, containing covenants similar to the one in question; right to declare forfeiture must be strictly reserved, 18 R. C. L. 1813; Thompson v. Christie, 11 L. R. A. 236, 20 Atl. 934; Archer 752. The right to declare a forfeiture was not distinctly reserved; there was a waiver of strict performance, Westmoreland Co. v. Dewitt, 5 L. R. A. 731; Pyle v. Henderson, 65 W. Va. 39, 63 S. E. 762; Archer 548-549. Plaintiffs in error have not brought themselves within the rule governing forfeitures as announced in the foregoing cases; defendants did not exercise their rights promptly; an enforcement of the forfeiture of the lease in question would be unconscionable.

BLUME, Justice.

A. B. Cross, defendant in error here, brought this action as plaintiff, against The Pryor Mountain Oil & Gas Company, a corporation, hereinafter referred to as the corporation or the lessor, and Ellen J. Sessions, B. A. Sessions and E. D. Sessions, plaintiffs in error here, to recover the possession of the SW¼ of the NW¼ of the NW¼ of Section 34, T 56 N. R. 97, for the purpose of producing and marketing gas therefrom; alleging that plaintiff was entitled to such possession by virtue of the lease hereinafter mentioned. Defendants answered, setting out said lease and alleging that it was executed by said corporation with the consent of the codefendants. The material parts of said lease are as follows:

"THIS INDENTURE OF LEASE, made and entered into this 4th day of June A. D. 1918, by and between THE PRYOR MOUNTAIN OIL AND GAS COMPANY, a corporation duly organized and existing under and by virtue of the laws of the State of Wyoming, party of the first part, and G. M. SMITH and L. B. JACKSON, doing business under the firm name and style of SMITH & JACKSON, a partnership, parties of the second part, WITNESSETH:—

That the party of the first part, for and in consideration of the sum of one dollar to it in hand paid by the party of the second part, receipt of which is acknowledged, and in further consideration of the covenants and conditions herein contained to be kept and performed by the parties of the second part, has granted, demised, leased and let, and by these presents does grant, demise lease and let unto the said parties of the second part, their heirs and assigns, for the sole and only purpose of drilling and operating for oil and gas, and of laying pipe lines, constructing tanks, buildings and other structures thereon to take care of the products therefrom, all that certain tract or parcel of land situate, lying and being in the County of Big Horn and State of Wyoming, and particularly described as follows, to-wit:—

The S½ of the N½ of the NW¼ of Sec. 34, Twp. 56 N. R. 97 west of the 6th P. M., containing 40 acres, more or less;

It is hereby agreed that this lease shall remain in full force and effect for a period until August 15-1918 from the date hereof, and as long thereafter as oil or gas or either of them is produced therefrom by the party of the second part, their heirs or assigns, and that should production be had from said premises that the parties of the second part shall market the product within six months from the date of discovery or at a time mutually agreed upon by both the party of the first part and the parties of the second part.

No alteration or extension of this agreement shall be binding unless in writing and signed by the parties hereto.

All covenants and conditions hereof shall extend to and be binding upon the successors, heirs and assigns of the parties."

Defendants alleged that said lessees discovered gas in paying quantities before August 15, 1918, but that they wholly failed to market said gas within the time specified in said agreement, or at any time, and by reason of other wells being operated in the vicinity, the gas from the gas well brought in by lessees was being drained. Defendants asked

that the title to said premises be quieted in them. The plaintiff replied that said lessees attempted with due diligence to find a market for said gas but was unable to do; that about September 1, 1918, said lessees gave to the said corporation, lessor, the privilege to market said gas at such price as lessor might deem proper and account for the proceeds in accordance with the terms of the lease; that lessor thereafter entered into negotiations with various parties for the sale of said gas and the purchase of the leasehold interest, but was unable to dispose of same; that on May 18, 1920, plaintiff purchased from Wise & Jackson, successors in interest of Smith & Jackson, the rights of said lessees without notice of any adverse claim of defendants, and was then ready, able and willing to market the gas from said well at a fair valuation. The case was tried to the court without the intervention of a jury, judgment was rendered for plaintiff, a motion for a new trial was filed and overruled, and defendants bring this case here by proceedings in error.

1. The original lease was made by said corporation with G. M. Smith and L. B. Jackson, a partnership doing business as Smith & Jackson. W. A. Wise testified that in fact five parties were interested in the lease, as lessees, but that only two, himself and Jackson, paid any money to drill the well; that the others failed to do so and that he, therefore, and Jackson, took over the lease and the well. The assignment of the lease to plaintiff is in writing, was made by Wise & Jackson, copartners, as successors in interest of the partnership of Smith & Jackson, and the assignors declare and warrant that they are the owners of the lease assigned. No written conveyance appears to have been made by the partnership of Smith & Jackson, as such, or by G. M. Smith, to Wise & Jackson, and it is, on that account, contended that the plaintiff has no interest in the lease in controversy, defendants claiming that an assignment of such a lease must be in writing in order to comply with the Statute of Frauds. There are two answers to that contention. In the first place L. B. Jackson, one of the members of the partner-

ship of Smith & Jackson, had some interest in the lease, the amount of which we need not determine. That interest was duly conveyed to plaintiff who became the owner thereof. If G. M. Smith actually had an interest in the lease, the question here could at most only be that of non-joinder of parties, and that was not raised in the case. In the second place we fail to see how, under the circumstances, the defendants can raise the point mentioned. The partnership of Wise & Jackson purported to represent all the interests which the lessees under the lease obtained. The controversy here is not among the lessees. The claim set up by defendants is against the present validity of the lease in toto. Defendants assert no right under Smith & Jackson or G. M. Smith, but contest the validity of whatever claim they or any of their assignees or successors in interest might have. The lease is assignable by its terms. Defendants are not concerned with and do not base any claim of right on the method of the devolution of the interest in the lease from Smith & Jackson to Wise & Jackson and would not be, and are not, a party to any transfer or assignment made by the one to the other. So far as they are concerned it is immaterial whether the one or the other own the lease. It is not their duty to protect Smith in whatever rights he might have. In these circumstances they cannot avail themselves of the defense under the statute of frauds which might be available to Smith if the controversy were between him and any claimants under him or under the lease to which he was a party. 27 C. J. 304; B. Rath Tool Co. v. Champ Spring Co., 93 Mo. App. 530, 67 S. W. 967; Geer v. Boston Little Circle Zinc Co., 126 Mo. App. 173, 178; 103 S. W. 151; Elliott v. Scaville's Assignee, 144 Ky. 584; 139 S. W. 806; Featherman v. Hennesy, 42 Mont. 535, 539, 113 Pac. 751.

2.  The main contention herein is that by reason of the default in the covenant to market the gas, the defendants are entitled to have the lease cancelled. Without attempting to set out the evidence in detail, it tends to show that W. A. Wise was the main representative of the lessees in

drilling the well in question and in carrying on the negotiations in connection with marketing the gas. The well came in about August 1, 1918 and the lessees expended about $24,000 in drilling it. A number of other gas wells were then being operated in the neighborhood, doubtless draining the territory adjacent to the well in question here. Soon after the discovery of the gas in the well in question, Wise, together with B. A. Sessions, who owned an interest in the land on which the well was situate, and E. D. Sessions, president of the Pryor Mountain Oil & Gas Company, went to the town of Powell and attempted to sell the gas there, but they were unable to do so. Wise thereafter went to Oklahoma, his home, but made arrangements with E. D. Sessions, president, as stated, of said corporation lessor, to continue negotiations for the marketing of the gas and that whatever price for the gas would· be satisfactory to the lessor, would also be satisfactory to the lessees. An active correspondence took place between Wise, after having gone to Oklahoma, and said E. D. Sessions, concerning the same matter until about the middle of August, 1919. E. D. Sessions, as well as Roy Willey, director and assistant· secretary of said corporation, seem to have made every effort in the meantime to market the gas, but did not do so, mainly for the reason that no price satisfactory to them could be obtained. Finally, in the spring of 1920, Wise came to Wyoming and, as stated, sold the lease to Cross, plaintiff herein, and president of the Lovell Gas & Electric Company. Cross immediately made arrangements to meet and did meet the representatives of the Pryor Mountain Oil & Gas Company, informing them that he was ready to market the gas through the Lovell company, but he was then told by said representatives of the lessor that he could not do·so; "that he had no holdings there;" in other words, apparently, that his rights under the lease were denied. Prior to that time no notice of any kind had been given by lessor of the cancellation or intended cancellation of the lease and no action with that end in view had been taken. There was

a conflict in the evidence as to whether E. D. Sessions acted in his individual capacity or by authority of or on behalf of said corporation.

Counsel for defendants, plaintiffs in error here, contend (1) that the lease, by its terms, expired at the end of six months from the time the gas well was brought in, if gas was not marketed therefrom within that time; (2) if not so, then the lessees and their assigns forfeited the lease by reason of their failure to so market the gas. We do not think that the first contention can be sustained, at least separate from and independent of the second. Counsel construe the lease as reading that it should be in effect as long as gas was produced and marketed. But it does not so read. It provides that it shall be in force until August 15, 1918 "and as long thereafter as oil or gas or either of them is produced therefrom." Then follows an independent covenant that "should production be had    *    *    *    the second party shall market the product within six months, etc." The marketing clause is a provision separate from that providing for "producing" oil or gas, is not a condition precedent, and conclusively shows it to have been the intention of the parties, that "marketing" and "producing" gas should be considered separate matters, necessarily, inasmuch as gas cannot be stored, restricting the meaning of the term "producing." Evidently all that was intended in that connection was that a well should be brought in that would produce gas. Hence, as long as production in that sense continued, the lease necessarily remained in force and effect unless, as contended, it became subject to forfeiture or cancellation by reason of the fact that the gas was not marketed within the time specified. We shall, therefore, turn our attention to that question.

3. We need not consider the cases dealing with diligence leading to the discovery of gas or oil. We are here dealing with the question whether after the discovery of a gas well in paying quantity, a lease that by an independent covenant provides for marketing the gas within six months after

such discovery is, under the circumstances of this case, subject to forfeiture, though it does not declare that the failure to do so shall render the lease subject to such forfeiture or make it void. Lessees of an oil or gas lease stand generally on a different footing after such discovery than before, for they are naturally entitled to consideration at the hands of the court after the expenditure of a large amount of money, amounting in the case at bar to $24,000. Clutter v. Wisconsin Texas Oil Co. (Tex. Civ. App.) 233 S. W. 322, 324. It is often held that prior to discovery the lessee has no vested estate, but if exploration and development is made in accordance with the terms of the lease, and oil or gas are produced thereby, such lessee acquires an interest in the land. Rembarger v. Losch, 70 Ind. App. 98 118 N. E. 831; Masterson v. Amarillo Oil Co. (Tex. Civ. App.) 235 S. W. 908, 916, and cases cited; 27 Cyc. 724; 18 R. C. L. 1211, 1212; Gypsy Oil Co. v. Cover, 78 Okl. 158, 189 Pac. 540, 11 A. L. R. 129; Eastern Oil Co. v. Coulehan, 65 W. Va. 531; 64 S. E. 836; McGraw Oil Co. v. Kennedy, 65 W. Va. 595, 599; 64 S. E. 1027, 28 L. R. A. (N S) 959.

And when an interest in real estate has been thus acquired by a lessee, it will not be forfeited, unless it clearly appears that it would be against equity to permit the lessee longer to assert such interest. Rembarger v. Losch, supra. See Horse Creek Coal Co. v. Trees, 75 W. Va. 559, 84 S. E. 376. Forfeitures are not favored by courts, and though that rule has been considerably relaxed in connection with oil or gas leases, that has been done only in cases where the equity of the case has demanded it. In the case of Thompson v. Christie, 138 Pa. 230, 20 Atl. 934, 11 L. R. A. 236, a case involving an oil and gas lease, the court said:

"The rule undoubtedly is that the right to declare a forfeiture must be distinctly reserved, that the proof of the happening of the event on which the right is to be exercised must be clear, that the party entitled to do so must exercise his right promptly, and that the result of enforcing the forfeiture must not be unconscionable."

To the same effect see Decker v. Kirlicks, 110 Tex. 90, 216 Tex. 385; Craig v. Cosgrove, 277 Pa. 580, 121 Atl. 406; Wilson v. Purnell, 199 Ky. 218, 250 S. W. 850; Rose v. The Lanyon Zinc Co., 68 Kan. 126, 74 Pac. 625; Vanatta v. Brewer, 32 N. J. Eq. 268; Thornton on Oil & Gas (3rd d.) Sec. 180; Grubb v. McAfee, 109 Tex. 527, 212 S. W. 464; 18 R. C. L. 1213, 1214; McGraw Oil Co. v. Kennedy, supra. In Ann. Cas. 1917 E, page 1133, a note citing many cases lays down this rule:

"The term for which a mining lease is to exist is frequently fixed for a number of years and 'for so long as oil and gas can be produced in paying quantities.' Under such a lease, whenever the lessee has drilled and produced oil or other minerals, according to the subject matter of the lease, or has done something substantial under its terms, he is said to have acquired a vested right and therefore the lessor cannot deprive him of the right to continue operation."

In the case of Jackson v. Twin State Oil Co., (Okl. Sup.) 218 Pac. 324, the court said:

"We believe the better rule is that, where an oil and gas lease does not provide in express terms for a forfeiture by termination for non-development or non-payment of rental, and the lessee has paid a substantial amount as cash bonus, the lessor cannot declare a forfeiture for such failure alone, unless such failure continues for such time as to warrant the presumption that the lessee has abandoned the lease or wilfully refuses on demand to perform the obligations of the contract."

In the case at bar, a substantial amount has been paid. It was expended in drilling the land and bringing in a paying gas well, which takes the place of money. If, where such substantial amount has been expended by lessee, the lease, in the absence of a forfeiture clause therein, can be cancelled only for abandonment or refusal to perform in a

case before development, surely such principle should not any the less apply after discovery of gas or oil in paying quantity. It was said in the case of Texas Pacific Coal & Oil Co. v. Bratton, (Tex. Civ. App.) 239 S. W. 688:

"The cancellation of the lease sought by the plaintiff in the present suit is in the nature of a forfeiture of all expected benefits from the vast amount of work and money expended in good faith by the lessee in an effort to develop the lease, and in the fruits of which development plaintiff would share. In order to entitle him to the relief sought, it is incumbent on the plaintiff to show clearly his right thereto by the express language of the lease, or by words clearly implied therefrom."

It is, of course, true that unless gas is marketed, the lessor would receive no benefit therefrom and the main or only consideration for such lease would entirely fail. A lessee cannot delay for an unreasonable time to market the gas and expect to continue to hold the lease, particularly where the territory is being drained. If he does, he will be declared to have abandoned it and equity will favor forfeiture because that would promote justice. Thornton, supra, Sec. 174; The Eastern Oil Co. v. Coulehan, supra; Strange v. Hicks, 78 Okl. 1, 188 Pac. 347; Monarch Oil & Gas Co. v. Hunt, 193 Ky. 315, 235 S. W. 772. In the case at bar the period of six months was mentioned as the time in which the gas should be marketed. It may be that, if this clause stood alone, and had the lessees herein made no effort during that time to sell the gas, the lease should be cancelled for abandonment. But that period was not, we think, intended as a period of absolute limitation, as plainly appears from the provision that the gas should be marketed within six months "or at a time mutually agreed upon by" the parties. The last clause clearly contemplates that contingencies might arise which might make it advisable to defer the marketing of the gas to a later time. That may account for the absence of a forfeiture clause in the lease. We are not, in any

event, able to say, as the authorities require in a case of this kind, that the lease clearly contemplates a forfeiture at the end of six months from the time of discovery, and hence whether there was an abandonment, or in other words whether justice requires the cancellation of the lease, must be determined not alone from the agreement above mentioned but from all the circumstances in the case. The facts shown herein are, we think, sufficient to warrant the lower court in finding for the plaintiff on that question.

We need not determine as to whether or not E. D. Sessions, president of the lessor and Willey, its assistant secretary, were authorized to act for and on behalf of the corporation. Even though they should be considered as acting only as agents of the lessees, we think that there is still sufficient evidence in the record to justify the lower court in holding in favor of the lessees on the question of abandonment. Further than that, if lessees were in default, lessor was certainly not prompt in insisting upon forfeiture, and it has been held that it should have been, if it desired to take advantage of the default. Craig v. Cosgrove, supra; Thompson v. Christie, supra; Indiana Oil G. & D. Co. v. McCrary, 42 Okl. 136, 140 Pac. 610; Pierce Oil Corporation vs. Schacht, 75 Okl. 101, 181 Pac. 731. In Howerton v. Kansas Natural Gas Co., 81 Kans. 553, 106 Pac. 47, 34 L. R. A. (N S) 34 it was said that "ordinarily when unnecessary delay becomes apparent, the lessor ought to call upon the lessee, or party holding under him, to do the things required under the lease, and to wait a reasonable time for such party to act." Nothing of the kind was done here. In fact, nothing had been done when Cross bought the lease from Wise & Jackson to indicate that said lessor was insisting upon a forfeiture, and the purchase price for the lease was paid by Cross in view of the situation as he found it. The latter was ready, willing and able to perform the covenant to market the gas and so informed said lessor. It is held that forfeiture for non-payment of rent must be declared before the rent is tendered. 18 Am. & Engl. Ency. of Law

(2nd Ed.) 389; 24 Cyc. 1353; McKean Gas Co. v. Walcott, 254 Pa. 323, 98 Atl. 955; Craig v. Cosgrove, supra. We see no reason why the same principle should not be applied here, particularly in view of the fact that there was no forfeiture clause in the lease, that the lessees had a vested estate and that under these circumstances, as stated above, forfeiture will be declared only when equity demands it. If the lessor deemed it inexpedient or harsh to insist upon forfeiture while the lessees were in default, surely it cannot ask the court to decree such forfeiture to be just, after the default ceased or after the lessees' assignee offered to end it and was ready, able and willing to do so by then marketing the gas.

The judgment of the lower court should be affirmed and it is so ordered.

*Affirmed.*

POTTER, Ch. J., and KIMBALL, J., concur.

NOTE—See 27 C. J. p. 304; 27 Cyc. 736, 737 (1925 Anno.)