SEVERSON ET AL., APPELLANTS, *v.* BARSTOW ET AL., RESPONDENTS.

(No. 7,581.)

(Submitted December 9, 1936. Decided December 23, 1936.)

[63 Pac. (2d) 1022.]

528

*Mr. P. F. Leonard,* for Appellants, submitted a brief and argued the cause orally.

*Mr. D. R. Young,* for Respondents, submitted a brief and argued the cause orally.

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The plaintiffs, Kenneth H. Severson and Mayme Severson, his wife, have appealed from a judgment against them and in favor of J. L. Barstow and others, entered in a suit to quiet title to the S. W. ¼ of Sec. 20, T. 7 N., R. 60 E. M. P. R., in Fallon County and owned by them, and to that end to have a certain oil and gas lease thereon canceled as abandoned, forfeited, and terminated. Plaintiffs' specifications of error challenge each of the trial court's seven findings of fact, the correctness of the court's conclusions of law, and the judgment.

Findings of fact numbered 1 to 4, inclusive, merely follow the allegations of the complaint admitted by the answer, or the undisputed evidence adduced, to the effect that (1) on April 24, 1926, these plaintiffs executed and delivered to Barstow an oil and gas lease on the premises, to be in force for the term of five years and as long thereafter as oil or gas, or either of them, was produced from the land by the lessees, and (2) that, if no well was commenced on the land on or before August 24, 1926, the lease should terminate, unless the lessee on or before that date pay or tender the sum of $40 as rental, which payment would extend the time for the commencement of a well four months, with the privilege of further delay for like periods by like payments, and (3) under this provision delay rental was paid periodically and the time for commencing drilling operations extended to August 1, 1931. (4) Defendants commenced drilling operations in April, 1931, and completed a well on or about May 11, 1931, which well had an open flow of 415,000 feet of gas per day, a rock pressure of 114 pounds and a volume, measured at open flow, of 430,000 cubic feet per day, sufficient to constitute commercial quantities.

The remaining three findings are in effect as follows: (5) That at the time of completing the well defendants made inquiry as to the available market for the sale of the gas, and ever since have used reasonable diligence in an effort to find

a market and have been unable to find any market whatsoever; that ever since the completion of the well there has been an entire absence of a market for the gas which the well was capable of producing. (6) That no useful purpose would have been served by drilling additional wells, and no useful purpose will be served by drilling additional wells until some further market is developed. (7) That a reasonable attorney's fee for either the plaintiff or defendants in prosecuting or defending this action is the sum of $100.

"Upon the foregoing findings the court makes the following conclusions of law: In view of the reasonable diligence of the defendants to market the gas and in view of the entire absence of a market, the lands covered by said lease have been since the 11th day of May, 1931, in legal contemplation, producing gas in commercial quantities; that said lease is still in force and effect. That the defendants are entitled to judgment dismissing the action and for the sum of * * * $100.00, * * * attorneys' fees and costs and disbursements in this action." Judgment of dismissal and for $100 and costs followed.

No good purpose would be served by detailing the evidence on which findings numbered 5 and 6 are based; suffice it to say that the only markets ever available to the Baker field were the Carbon Black Company, which went out of business on January 1, 1931, and was, therefore, never available as a market for the gas from the instant well, and a large concern which controlled 60 per cent. of the gas lands in the field, but which, by reason of a surplus supply from controlled wells, absolutely refused to take this gas. The proof amply supports finding of fact numbered 5, and justifies the conclusion drawn as finding numbered 6, to the effect that no useful purpose would be served by drilling additional wells until some further market is developed.

The record discloses that, there being no present or prospective market for the gas, the lessees capped the well and removed their equipment from the premises. There being no

material conflict in the evidence, the question as to what the trial court should do in the light of the facts disclosed, became one of law.

The court correctly concluded that, "in the entire absence of a market, the lands * * * have been since the 11th day of May, in legal contemplation, producing gas in commercial quantities; that said lease is still in force and effect."

Where, as here, the principal consideration for a lease ▉▉▉▉ is the payment of royalty, the lease carries an implied covenant to use reasonable diligence to market the product when produced, although the lease is silent on the subject, and whatever is implied in a contract is as effectual as what is expressed; in an action to cancel such a lease, the burden rests upon the lessee to establish the fact of reasonable diligence if he would prevent cancellation. (*Berthelote* v. *Loy Oil Co.*, 95 Mont. 434, 28 Pac. (2d) 187.) The lessees here met this requirement, and, while a different rule prevails with relation to oil wells, as oil, unlike gas, may be stored and divided, in legal contemplation, under the facts shown, this gas well was "producing" within the meaning of the lease. (Mills & Willingham on Oil and Gas, 121; *Berthelote* v. *Loy Oil Co.*, supra; *Pelham Petroleum Co.* v. *North*, 78 Okl. 39, 188 Pac. 1069.)

As authority for the cancellation of the lease *in toto*, for failure to market the gas although there was no market and the lessees used reasonable diligence and had no intention of abandoning the lease, plaintiffs rely chiefly on the case of *Elliott* v. *Crystal Springs Oil Co.*, 106 Kan. 248, 187 Pac. 692, 694, wherein it is said: "The contract did not provide for the contingency that gas wells might be developed which would be unproductive for want of a market. As the matter stands, the lessor's property is no more productive to him than if the lessee had found no gas. And, while the lessees have expended much money to drill these gas wells, the wells are of no present or of no prospective value to them. In such a situation the lessor seems to be entitled to a termi-

nation of the lease under the plain text of the contract." In that case, however, the decision was perhaps compelled by "the plain text of the contract," which contains the express stipulation, not found in the contract before us or generally in such contracts, that "sixty days after both producing and drilling operations cease this lease to be void and surrendered for cancellation" (see *Greenwood* v. *Texas-Interstate Pipe Line Co.*, (1936) 143 Kan. 686, 56 Pac. (2d) 431), and is not in accord with the authorities generally (Mills & Willingham on Oil and Gas, 121; *Strange* v. *Hicks*, 78 Okl. 1, 188 Pac. 347; *McGraw Oil & Gas Co.* v. *Kennedy*, 65 W. Va. 595, 64 S. E. 1027, 28 L. R. A. (n. s.) 595; *Summerville* v. *Apollo Gas Co.*, 207 Pa. 334, 56 Atl. 876, 879; *Union Gas Co.* v. *Adkins*, (C. C. A.) 278 Fed. 854; *Masterson* v. *Amarillo Oil Co.*, (Tex. Civ. App.) 253 S. W. 908; *Prior Mountain Oil & Gas Co.* v. *Gross*, 31 Wyo. 9, 222 Pac 570).

On the facts appearing from the record, it being undisputed that there was no market for the gas, the plaintiffs were not entitled to a cancellation of the lease *in toto*.

What has been said with reference to the breach of the implied covenant to market the gas from the well drilled applies with equal force to the breach of the like implied covenant to drill offset wells for the protection of the land from drainage by wells operated outside its lines. There being no possible market for the gas when produced, the drilling of a number of additional wells would not protect this land in this respect, for each well, when drilled, would have to be capped and the drainage would continue as theretofore. "The law neither does nor requires idle acts." (Sec. 8761, Rev. Codes.) The failure of the lessees to drill offset wells cannot be deemed a breach of this implied covenant, unless or until it is shown that there would be a market for the gas produced from such wells.

However, as suggested by the learned trial judge at the time of rendering judgment, the lessees should not be permitted to "freeze" plaintiffs' land indefinitely, although

it is not apparent in what manner the lessors will be injured thereby so long as there is no market for the gas, and, conversely, it is not apparent as to how the lessees will be benefited by continuing the lease in force and effect, except for the expectation of a future market. It is stated, *dehors* the record, but not contradicted, that since the trial a market has been found and the gas is being marketed, although the record discloses that the sale of the gas produced from this well would bring very small returns to either the lessees or the lessors. As this situation, if it exists, is not before us on the record, we need not here determine what must be the future conduct of the lessees with respect to further development or the drilling of offset wells, but it may be taken into consideration in applying the rule with respect to prospective markets.

While our statutory provision for cancellation of a lease (secs. 6902–6904, inclusive, Rev. Codes) renders an action thereunder an action at law, it nevertheless embodies the principle of equitable relief (*Stranahan* v. *Independent Natural Gas Co.,* 98 Mont. 597, 41 Pac. (2d) 39), and courts should in such a case seek to do equity as between the parties. Where neither party is at fault, it would be inequitable to permit the lessees to hold the land for years without action or profit, on the mere hope that at some indefinite time a market would be developed, and, on the other hand, it would be inequitable, after lessees have expended a considerable amount of money in drilling wells, to cancel the entire lease and thus entirely extinguish that hope.

Courts have found a way out of this dilemma in the exercise of "their broad equitable powers," by protecting the lessee as to the land on which a well, or wells, appear, and canceling the lease as to the remainder of the land, so that the lessee may in the future secure some return for the money expended, and, at the same time, the lessor may have the opportunity of seeking other means of securing an income from his land. (See *Pelham Petroleum Co.* v. *North,* supra; *Brown* v. *Union*

*Oil Co.,* 114 Kan. 166, 217 Pac. 286; *Alford* v. *Dennis,* 102 Kan. 403, 170 Pac. 1005; *Robinson* v. *Miracle,* 146 Okl. 31, 293 Pac. 211; *Donaldson* v. *Josey Oil Co.,* 106 Okl. 11, 232 Pac. 821; *Brewster* v. *Lanyon Zinc Co.,* 140 Fed. 801, 72 C. C. A. 213.)

In order to do equity and in justice to each of the parties hereto, the lease should be canceled as to the three 40-acre tracts on which no work has been done, leaving to the lessees the 40-acre tract on which they have drilled a well and as to which they were waiting for a market for the gas developed at the time this action was commenced and tried.

In the condition of the record, and as each party has secured here a portion of what they sought to secure, neither should pay to the other an attorney's fee, and, therefore, we need not go into the legality of the award made by the trial court.

The cause is remanded to the district court of Fallon county with direction to modify the judgment in accordance with this opinion, and, as modified, the judgment will be affirmed; each party to pay its own costs of appeal.

MR. CHIEF JUSTICE SANDS and ASSOCIATE JUSTICES STEWART, ANDERSON and MORRIS concur.