**STIMSON et al. v. TARRANT et al.**

No. 10067.

Circuit Court of Appeals, Ninth Circuit.

Dec. 15, 1942.

Rehearing Denied Feb. 15, 1943.

Gunn, Rasch & Gunn, M. S. Gunn, Carl Rasch, and M. C. Gunn, all of Helena, Mont., for appellants.

Geo. E. Hurd, of Great Falls, Mont., for appellee.

Before GARRECHT and HEALY, Circuit Judges and BOWEN, District Judge.

HEALY, Circuit Judge.

This is a suit in equity for the cancellation of an oil and gas lease. The court declined to decree cancellation, and the lessors appeal. The problem presented is whether the lease automatically terminated upon the temporary cessation of production of oil for lack of market, pursuant to a clause providing that the lease is to continue for a period of five years and "as long thereafter as oil or gas, or either of them, is produced."

The lease was made December 8, 1930. It provided for the payment of a royalty of one-eighth of the production, to be delivered to lessors in the pipeline. A producing oil well was brought in in May 1933, and production continued thereafter without interruption until January 1938, when pumping ceased for lack of market. Altogether seven wells were drilled, three of which were producers. After the market became nonexistent, 900 barrels of oil were pumped but the wells were shut down when existing storage space had been filled, no other storage facilities being available.[1] This condition persisted for about fourteen months. The court found that the lessee exercised reasonable diligence in attempting to find a market, but that he was unable to do so until the 1st of March, 1939. Production was then resumed and oil produced and sold continuously thereafter, down to the time of trial. The suit was

---

[1] The court found that "there was not available to said Tarrant any other facilities for the storage of oil because no pipeline connected with said wells, or any other pipeline in the Cut Bank field, in the State of Montana, in which field said land is situated, would receive said oil or store it, and said Tarrant was left with no alternative except to close in or shut in all of the producing wells, three in number, upon said land."

commenced in February 1940, and tried in December of that year.

Appellants argue for a literal interpretation of the disputed clause. They say that since the contract has not provided against the contingency of lack of market after termination of the five-year period, the lessee must continue to produce oil regardless, or the lease is at an end.

■ The question is one of Montana law. There is no reported case from that jurisdiction directly deciding the point, although there are several dealing with lease provisions worded substantially as the present. The earliest of these is Steven v. Potlatch Oil & Refining Co., 80 Mont. 239, 260 P. 119. In addition to what has been called the "thereafter" clause, the lease there provided that in case gas was struck and no profitable market found, the gas might be "shut in" and no royalty be due. The lessee encountered gas in marketable quantities before the end of the five-year period but could find no market for it. He shut down while seeking a purchaser. About four months after the expiration of the five-year term the lessor brought suit for cancellation. It was held that the action was premature and the lease not forfeited. "Assuming," said the court, 80 Mont. at page 254, 260 P. at page 123, "that the defendants had brought in a well capable of producing gas in marketable quantities: To say that they should be declared in default and shall forfeit their lease if they do not market the product, when there is no profitable market within reach, would be contrary to the terms of the contract which the parties have made for themselves. Such a construction would violate the spirit if not the very letter of the contract. It would amount to saying the defendants have drilled a producing well which furnishes gas in marketable quantities, but as there is no market the well is not producing." The case is distinguishable because of the express provision in respect of shutting in the well.

In Berthelote v. Loy Oil Co., 95 Mont. 434, 28 P.2d 187, where the lease contained the pertinent provision as to termination, gas was encountered during the five-year period but the well was not operated because of claimed inability to market. The lessor served a notice of forfeiture the day after the fixed term expired. The court said that "under the lease, the oil or gas must not only be discovered but must be produced, and the production continue thereafter during the entire term," 95 Mont. at pages 448, 449, 28 P.2d at page 191. The opinion holds that there is an implied covenant to market and that although the lessee is not required in every instance to market, he must prove that he used reasonable diligence. It was thought that the lessee had not sustained this burden. As a whole, it is to be gathered from the opinion that if the lessee uses reasonable diligence to market the gas and is unable to do so, the lease remains in effect. A difficulty with the opinion as authority here is that the court does not clearly relate its discussion to the "thereafter" clause. Nevertheless it does appear to assimilate that clause with the implied covenant to use reasonable diligence to market.

The most recent local decision cited is Severson v. Barstow, 1936, 103 Mont. 526, 63 P.2d 1022. There the lessees completed a well producing gas in commercial quantities but there was no available market; and the well was capped and lessees' equipment removed from the premises. This condition persisted beyond the fixed term. The conclusion of the trial court, affirmed on appeal, was that in the entire absence of a market, the leased lands, "in legal contemplation," continued producing gas in commercial quantities; and that the lease remained in force. The appellate court observed that "where, as here, the principal consideration for a lease is the payment of royalty, the lease carries an implied covenant to use reasonable diligence to market the product when produced, although the lease is silent on the subject, and whatever is implied in a contract is as effectual as what is expressed; in an action to cancel such a lease, the burden rests upon the lessee to establish the fact of reasonable diligence if he would prevent cancellation." The opinion goes on to state that the lessees had met this requirement, "and, while a different rule prevails with relation to oil wells, as oil, unlike gas, may be stored and divided, in legal contemplation, under the facts shown, this gas well was 'producing' within the meaning of the lease," 103 Mont., at page 532, 63 P.2d at page 1024.

Both parties take comfort in this decision, appellants leaning heavily on the dictum in respect of oil wells. However, the court had resort to a legal fiction in order to avoid cancellation; and a careful study of the case, as well as the earlier decisions of the Montana court, persuades us that a

like fiction would be resorted to in a situation comparable with the present. In the Severson case the court cites a contrary holding of the Kansas court in Elliott v. Crystal Springs Oil Co., 106 Kan. 248, 187 P. 692, 694, where it was thought that cancellation was required because "the contract did not provide for the contingency that gas wells might be developed which would be unproductive for want of a market." The Montana court declined to adopt so literal an interpretation of the contract.[2]

■ The dictum in Severson v. Barstow, supra, is less significant than the general spirit of the opinion. The court thought that while the statutory action for cancellation is an action at law, nevertheless the principle of equitable relief governs, "and courts should in such a case seek to do equity as between the parties," 103 Mont. at page 534, 63 P.2d at page 1025. In the situation before us the enforced closing down of the wells involved no loss from drainage. There was no intention to abandon the lease. And the storage of the oil underground was as effective as its storage in surface tanks, and obviously more economical. What the lessee did was in the mutual interest of the parties.

■ Appellants attack the findings relative to the exercise of diligence in marketing and to the lack of storage facilities. However, while the evidence on these matters is conflicting, we are not prepared to say that the findings are clearly erroneous.

Affirmed.

[2] The rule of the Kansas case referred to is in accord with the rule applied in Texas. See Stanolind Oil & Gas Co. v. Barnhill, Tex.Civ.App., 107 S.W.2d 746; Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783, 137 A.L.R. 1032.