JUSTICE TRIEWEILER
concurring and dissenting.
¶47 I concur with the majority’s conclusion that the rights associated with the oil and gas leases at issue in this case were assignable and that pursuant to their assignment, Somont Oil Company, Inc., had standing to bring this action in the District Court.
¶48 I dissent from the majority’s conclusion that the District Court *236 erred when it allowed the jury to consider oil prices, economic considerations, and C-W’s financial condition when it determined whether the oil and gas leases at issue had been terminated due to lack of production. I would conclude that the District Court’s evidentiary ruling, as well as its instructions to the jury, reflect the more reasonable approach to termination of oil and gas leases for failure to produce and was more consistent with previous interpretations of Montana law on this subject.
¶49 The issue in this case was simply whether production had ceased permanently within the meaning of the secondary term of the habendum clauses of the leases at issue. There are several standards employed in the various jurisdictions around the country for determining whether cessation is temporary and reasonable or permanent. They are best summarized by the Oklahoma Supreme Court in Cotner v. Warren (Okla. 1958), 330 P.2d 217.
¶50 In Cotner, the plaintiff held a leasehold estate in oil and gas under lands owned by the defendants. The term of the lease was for one year “and as long thereafter as oil and gas or either of them, is produced from said land by the lessee.” Plaintiff suspended production during a dispute with co-tenants but resumed production six months later when ownership rights had been clarified. When defendants sought to remove him from the land for failure to produce, he brought an action to quiet title to his leasehold interest. Plaintiff contended that since the cessation of production was temporary and for good reason, he had not ceased production within the meaning of the secondary clause. The district court agreed.
¶51 On appeal, the Oklahoma Supreme Court, in a case of first impression, noted that other courts in the country had taken various approaches in their determination of what circumstances will justify termination of a lease after the primary term. It summarized those approaches as follows:
The Kentucky court, in the case of Lamb v. Vansyckle, 205 Ky. 597, 266 S.W. 253, 254, had before it a factual situation much the same as here involved. In that opinion it was said,
‘Nor are we willing to adopt the rule'that a lease which is to continue for a definite period, and so long as oil or gas is produced in paying quantities, ipso facto terminates whenever production or development ceases for a brief period of time. On the contrary, we have reached the conclusion that the only fair and just rule is to hold that the lease continues in force unless the period of cessation, viewed in the light of all the *237 circumstances is for an unreasonable time.’
The quoted rule seems to be the most equitable one in such cases. One much more favorable to the lessee is followed in Louisiana where, ‘in order to cancel the lease, there must be some evidence that the wells thereon are no longer capable of producing oil or gas in paying quantities; or that the lessee, in closing down the wells, has done so with the intention of abandoning same.’ Tyson v. Surf Oil Co., 195 La. 248, 196 So. 336, 341. In Texas, the rule is much more favorable for the lessor although, there, it ‘has been modified when there is only a temporary cessation of production due to sudden stoppage of the well or some mechanical breakdown of the equipment used in connection therewith, or the like.’ Watson v. Rochmill, 137 Tex. 565, 155 S.W.2d 783, 784.
After thorough deliberation, we conclude that the rule quoted above from the Lamb v. Vansyckle case is the soundest and most equitable and the same is adopted. Under that rule, the controlling factual finding is whether or not the temporary stoppage in production was for an unreasonable length of time.
Cotner, 330 P.2d at 219.
¶52 In Stewart v. Amerada Hess Corp. (Okla. 1979), 604 P.2d 854, 858, the Oklahoma Supreme Court clarified that:
A decree of lease cancellation may be rendered where the record shows that the well in suit was not producing in paying quantities and there are no compelling equitable considerations to justify continued production from the unprofitable well operations.
¶53 In Stewart, the court concluded that whether or not the period of suspension is reasonable depends on “all surrounding circumstances.” 604 P.2d at 858. The District Comb’s instructions to the jury were consistent with the rule adopted by the Oklahoma Supreme Court in Cotner and elaborated on in Stewart and further reflect the approach taken in our prior case law. Because the contract language is the same and the effect on the parties is the same, I would apply the equitable principle in the same fashion.
¶54 In Stimson v. Tarrant (9th Cir. 1942), 132 F.2d 363, the Ninth Circuit Court of Appeals, in the only decision to this date which attempted to summarize Montana law on the subject at issue, reflected an approach similar to that adopted by the Oklahoma Supreme Court. In Stimson, the question was whether an oil and gas lease automatically terminated upon temporary cessation of production of oil based on a lack of market. The secondary clause in that lease also *238 provided that the lease was to continue for as long after the primary term “as oil or gas, or either of them, is produced.” During the secondary term, the lessee ceased production for a period of about fourteen months for lack of a market. The lessor brought a suit in equity for cancellation of the lease. However, the district court found that the lessee had exercised reasonable diligence in attempting to find a market and denied the relief sought by the plaintiff.
¶55 On appeal, the Ninth Circuit noted that although Montana law controlled, there was no reported Montana case directly on point. Therefore, it discussed several Montana cases including Berthelote v. Loy Oil Co. (1933), 95 Mont. 434, 28 P.2d 187 (relied on in the majority opinion) which interpreted similar lease provisions. It characterized this Court’s decision in Berthelote as follows:
As a whole, it is to be gathered from the opinion that if the lessee uses reasonable diligence to market the gas and is unable to do so, the lease remains in effect. A difficulty with the opinion as authority here is that the court does not clearly relate its discussion to the ‘thereafter’ clause. Nevertheless it does appear to assimilate that clause with the implied covenant to use reasonable diligence to market.
Stimson, 132 F.2d at 364.
¶56 Characterizing this Court’s prior decision in Severson v. Barstow (1936), 103 Mont. 526, 63 P.2d 1022, the Ninth Circuit stated that:
The court thought that while the statutory action for cancellation is an action at law, nevertheless the principle of equitable relief governs, ‘and courts should in such a case seek to do equity as between the parties,’ 103 Mont. at page 534, 63 P.2d at page 1025.
Stimson, 132 F.2d at 365.
In conclusion, the Ninth Circuit in Stimson held that:
In the situation before us the enforced closing down of the wells involved no loss from drainage. There was no intention to abandon the lease. And the storage of the oil underground was as effective as its storage in surface tanks, and obviously more economical. What the lessee did was in the mutual interest of the parties.
Stimson, 132 F.2d at 365.
¶57 Based on its review of Montana case law and the equitable considerations cited by the court, the Ninth Circuit affirmed the federal district court’s refusal to cancel the parties’ lease. There was no discussion of a breakdown of equipment nor suggestion that Montana would follow the harsh Texas rule in that case.
*239 ¶58 Finally, this Court in Christian v. A.A. Oil Corp. (1973), 161 Mont. 420, 427-28, 506 P.2d 1369, 1373, in spite of its observation that forfeitures are favored in oil and gas leases, held that:
The test for determining whether there was sufficient production or whether the lessee was acting with reasonable diligence in producing and marketing the gas from the leased lands is the diligence which would be exercised by the ordinary prudent operator having regard to the interests of both lessor and lessee. Sullivan, Handbook of Oil and Gas Law, s 91, p. 173, 2 Brown, Oil and Gas Leases, 2d ed., s 16.02, pp. 16-49. This is a question of fact that will depend upon the facts and circumstances of each case. Berthelote v. Loy Oil Co., 95 Mont. 434, 28 P.2d 187.
¶59 This Court in Christian noted that what may be reasonable with regard to oil production will be different from what is reasonable with regard to gas production. We did not elaborate on how the rule would be different for oil and gas production. However, I would conclude that those are simply circumstances to be taken into consideration by the finder of fact when determining whether temporary cessation was reasonable.
¶60 To follow the more arbitrary and inequitable approach taken by the majority based on Texas decisional law and the distinction between “forfeiture and equity” and “ownership in place” exalts form over substance and denies the fact finder in this case and future cases the opportunity to consider many relevant circumstances regarding the temporary suspension of production.
¶61 Furthermore, while in the authorities relied on by the majority there is substantial discussion about the rights of the lessor, it is worth noting that the lessor in this case did not feel sufficiently aggrieved by C-W’s conduct to cancel the leases in question. Only Somont, which sought to interfere with C-W’s contractual relationships for its own benefit, brought this action.
¶62 For these reasons, I dissent from the majority opinion. I would affirm the judgment of the District Court.
JUSTICE COTTER joins in the foregoing concurrence and dissent.