BECK, Respondent, v. NORBECK COMPANY AND
SUSAN M. WIGHT, Defendants. WIGHT, Appellant.
(No. 8432.)
(Submitted May 15, 1944. Decided October 3, 1944.)
[151 Pac. (2d) 1014.]

*Mr. W. B. Leavitt* and *Mr. Fred Huntington,* for Appellant, submitted an original and a reply brief; *Mr. Leavitt* argued the cause orally.

*Mr. Al Hansen,* for Respondent, submitted a brief and argued the cause orally.

MR. CHIEF JUSTICE JOHNSON delivered the opinion of the court.

Defendant Wight appeals from a decree cancelling a gas lease given to her predecessor in interest, Norbeck Company, covering the east half of section 18, township 8 north, range 63 east, M. M., in Fallon County, Montana.

The lease was for five years from its date of execution, June 3, 1931, "and as long thereafter as gas is produced from

said land by the lessee." It provided that a well should be drilled to completion before October 1, 1931, lessee then "to have the privilege of deferring the drilling of any other well * * * until market for the gas shall be obtained or a sale of the gas found," such period of deferment not to extend beyond June 3, 1936. The parties were to share the cost of additional wells in proportion to their interests under the gas lease, which were 25 % in lessor and 75 % in lessee. The lessor was also to have gas for heating and lighting her two sets of ranch buildings.

It is agreed that the first well was duly drilled on the northeast quarter and gas found in commercial quantities; but water came in and caused some trouble and expense to lessor, in order to obtain gas for use on her ranch, by the necessity of "blowing" the well so as to prevent water from getting into the pipes, especially in the winter when it would freeze. There was some discussion and correspondence between the parties about cementing off the water and about selling gas to a neighbor; but nothing came of the proposed sale, as the amount of gas to be purchased would not justify the cost of the necessary pipeline. It is agreed that there was no commercial market for gas until January 8, 1935, about three and a half years after the execution of the lease, when at Norbeck Company's initiative it and the lessor entered into a cooperative or unit agreement for development of the southeast quarter along with some 14,700 other acres of land, and an accompanying gas sale agreement with the Gas Development Company, in accordance with federal and state laws. (Act of Feb. 25, 1920, 41 Stat. 437, as amended by Act March 4, 1931, 46 Stat. 1523, 30 U. S. C. secs. 22, 48, 181 to 194, 201 to 208, 211 to 214, 223 to 229, 241, 251, and 261 to 263; Chapter 171, 1933, Session Laws of Montana.)

In accordance with those laws, whose purpose is to conserve natural gas resources and bring about their efficient and economical development, the contracts gave the Gas Development Company the sole and exclusive right to produce gas from the Judith River Sand in all lands included, the gas produced from wells, wherever situated thereon, to be allocated to each tract

according to its acreage "for the use and benefit of the parties," which included the lessor and the Norbeck Company, defendant's predecessor. Thus the unit agreements were not intended to interfere with the parties' interests under the gas lease and were so understood, the parties sharing amicably in the proceeds of the gas allocated to the southeast quarter of the section under these agreements in the proportions provided by the lease until January 1938, six and one-half years after the execution of the lease. Plaintiff's complaint was then filed and thereafter defendant's 75% of the gas proceeds allocated to the quarter section was impounded to await the outcome of this suit. On December 19, 1938, defendant executed, and plaintiff accepted, a release of the gas lease as to the northeast quarter. This suit therefore concerns only the southeast quarter of the section.

The amended complaint, filed on August 11, 1941, alleged that the well was defectively drilled and was not completed in that the water was not shut off in spite of repeated demands; that the plaintiff had been put to great expense in keeping the well open and had been unable to obtain sufficient gas for her two sets of buildings; that the defendant had abandoned the well and had failed to do any further drilling, thereby terminating the lease.

Thus plaintiff's chief complaint concerns the well on the northeast quarter. But it must be remembered that more than three years after the well was drilled and when its condition was fully known, the lessor at lessee's instance and concurrently with lessee, entered into the unit agreement which expressly provided that the total gas production was to be allocated to the several tracts "for the use and benefit of the parties," which included both the lessor and the lessee. She thus waived any and all defaults then existing and known to her, and expressly recognized the lease as valid and subsisting. She is therefore not now in a position to contend that the default terminated the lease.

By the same action the parties worked a practical modification of the gas lease, so far as the southeast quarter was con-

cerned, by eliminating the lessee's right and obligation to drill any wells on that quarter section, and by agreeing to accept and divide between them, in lieu of the proceeds of gas so produced, the proceeds of gas produced anywhere in the pooled lands and allocated to this tract upon an acreage basis. It is true that the unit agreement referred only to gas from the Judith River Sand, but that was apparently the only horizon known or contemplated as a prospective source of natural gas, and the one to which lessee was under an implied covenant to drill. (*Berthelote* v. *Loy Oil Co.*, 95 Mont. 434, 28 Pac. (2d) 187.) Thus producing wells upon any of the pooled lands were agreed to be substituted for wells upon the southeast quarter, therefore protecting the gas lease as to it, even though as to another legal subdivision the lease might have been subject to termination. (See *Severson* v. *Barstow*, 103 Mont. 526, 63 Pac. (2d) 1022.) This segregation of the two quarter sections was expressly assented to by the plaintiff, both in executing the unit agreements and in accepting the subsequent release of the northeast quarter from the gas lease.

One of the trial court's findings, made without objection by plaintiff, is that the Montana-Dakota Utilities Company is the successor in interest to the Gas Development Company under the unit agreement, which was approved by the Secretary of the Interior on January 8, 1935, and "ever since * * * has been continuously and is now engaged in the production and marketing of gas" under that agreement. It follows that on and after June 3, 1936, when but for actual gas production the lease would have terminated, it was still in effect without regard to the sufficiency of the well on the northeast quarter.

The decree appealed from is reversed and the trial court is directed to enter a decree in favor of defendant Wight adjudging the gas lease in question valid and effective as to the southeast quarter of the section.

ASSOCIATE JUSTICES ERICKSON, ANDERSON, MORRIS and ADAIR concur.