No. 27,591.

SAM H. ELLIOTT, *Appellant*, v. I. S. WOODWARD et al., *Appellees*.
No. 27,592.

SAM H. ELLIOTT, *Appellant*, v. R. P. RALSTON, *Appellee*.

(259 Pac. 686.)

SYLLABUS BY THE COURT.

MINES AND MINERALS—*Cancellation of Gas Leases for Nonuse.* An owner of land contracted to sell all natural gas that might be produced therefrom to a natural gas company, and provided in the contract that the company should not be compelled to take more gas from the wells on the lands than they were capable of delivering against the pressure of gas in the pipe lines of the gas company and also provided that when the company should be unable to take an average of 50,000 cubic feet of gas per day, either party might terminate the contract by giving to the other party notice in writing of its election so to do. Afterward, the owner of the land executed oil and gas leases to other parties and provided in the leases that they were subject to the contract for the purchase of gas by the natural gas company. Gas was produced on the land and sold to the gas company until the pressure in the wells became so low that it could not deliver gas into the pipe lines of the gas company. The owner of the land did not procure a cancellation of the contract. *Held*, it was not error for the court to refuse to cancel the leases.

Appeals from Cowley district court; OLIVER P. FULLER, judge. Opinion filed October 8, 1927. Affirmed.

*L. D. Moore* and *H. O. Janicke*, both of Winfield, for the appellant.

*George Gardner*, of Wichita, for appellees I. S. Woodward and J. S. Lucas; *Vincent F. Hiebsch* and *P. K. Smith*, both of Wichita, for appellee R. P. Ralston.

---

Mines and Minerals, 40 C. J. p. 1090 n. 67.

The opinion of the court was delivered by

· MARSHALL, J.: In the main, these cases depend on similar facts. The actions are to cancel oil and gas leases and to collect damages and attorney's fees. In each, judgment was rendered in favor of the defendants; and in each, the plaintiff appeals.

The plaintiff owned a large quantity of land in Cowley county. On June 3, 1921, he entered into a written contract with the Wichita Natural Gas Company. That contract contained the following provisions:

"The vendor agrees to sell and deliver to the vendee, and the vendee agrees to purchase and receive from the vendor, at the mouth of the well or wells now or hereafter drilled on the above-described land . . . all of the merchantable natural gas as it comes from the wells now or hereafter drilled upon said land during the life of the said leases or any renewal thereof, and as long as gas shall be produced in paying quantities therefrom.

"It is agreed that when the production of gas from the lands covered hereby so decreases that the vendee is unable to take therefrom an average of 50,000 cubic feet of gas per day during the period from November 1 in any year to April 1, next thereafter, then either party hereto may terminate this contract by giving the other party notice in writing of its election so to terminate the same, which notice shall designate the date on which said contract shall terminate, which shall be not less than thirty (30) days from the date of said notice, after which no further liability shall accrue to or in favor of either of said parties. . . .

"All the promises, covenants and agreements hereof shall bind and run in favor of the respective parties, their heirs, executors, administrators, successors and assigns. . . .

"The vendee agrees . . . that vendee shall not be required to take more gas under this contract than the well or wells at present developed or to be developed hereafter are capable of delivering against the varying pressure of the gas in the lines of the vendee . . ."

Afterward, on February 15, 1922, the plaintiff executed oil and gas leases on part of the land in favor of A. J. Fowler, R. H. Edgerly, and J. S. Lucas. Those leases contained the following provisions:

"If no well be commenced on said land on or before the 15th day of February, 1923, this lease shall terminate as to both parties, unless the lessee on or before that date shall pay or tender to the lessor, or to the lessor's . . . the sum of one dollar per acre, which shall operate as a rental and cover the privilege of deferring the commencement of a well for 12 months from said date. In like manner and upon like payment or tenders the commencement of a well may be further deferred for like period of the same number of months successively. And it is understood and agreed that the consideration first recited herein, the down payment, covers not only the privileges granted to

the date when said first rental is payable as aforesaid, but also the lessee's option of extending that period as aforesaid, and any and all other rights conferred. . . .

"This lease is subject to a contract of purchase of the gas by the Wichita Natural Gas Company."

A part of those leases was assigned to defendant I. S. Woodward and a part to defendant R. P. Ralston.

In 1923, wells were drilled by the defendants on the land covered by the leases. Until in April, 1925, gas was produced by both defendants and sold to the Empire Natural Gas Company, which had succeeded to the rights of the Wichita Natural Gas Company, when the gas from the wells was cut off from the pipe lines of the Empire Natural Gas Company because the pressure in those lines was so great that gas from the wells could not flow into the pipe lines. No rents were thereafter paid. Shortly after the Empire Natural Gas Company ceased to take gas from the wells, the plaintiff demanded of the defendants R. P. Ralston and I. S. Woodward that each release the oil and gas lease held by him. A release was executed by R. P. Ralston, but was never delivered to the plaintiff nor filed for record. It does not appear that any release was signed by defendant I. S. Woodward.

The cases turn on the effect to be given to the quoted clause of the leases. By the contract with the Wichita Natural Gas Company, the plaintiff contracted to sell all the gas produced on the lands in controversy to that company. The gas and oil leases were executed after that contract had been signed, and by its terms the lessees and their assignees were notified of the existence of that contract, submitted to it, agreed to it, and were bound by it. Under the contract, all the gas produced on the leased premises must be sold to the Empire Natural Gas Company unless the contract of the Empire Natural Gas Company should be canceled in the manner provided for in that contract. The plaintiff had the right to cancel it. Probably, each of the defendants had the same right as to the land controlled by him. Concede that he had such right. Neither the plaintiff nor either of the defendants were compelled to procure a cancellation of the contract. If the plaintiff desired that the gas be sold to some person other than the Empire Natural Gas Company, he should have procured a cancellation of the contract. The plaintiff, until he has secured a cancellation of the contract with the Empire Natural Gas Company, cannot compel a cancellation of the

leases held by the defendants. These cases are not like *Kahm v. Arkansas River Gas Co.,* 122 Kan. 786, 253 Pac. 563.

The judgments are affirmed.