No. 23,392.

C. A. Caylor et al., *Appellees*, v. The Bankers Oil Company, *Appellant*.

### SYLLABUS BY THE COURT.

1. Cancellation of Oil and Gas Lease—*Lease Terminated—Refusal to Release of Record—Damages—Attorney Fee*. Plaintiffs leased two tracts of land for gas and oil production for a term of one year and as much longer as gas or oil should be found in paying quantities. A "dry well" was drilled in one tract and that tract was re-ceded to plaintiffs. On the other tract a gas well was drilled and it produced profitably for some years. After it ceased to produce, plaintiffs made written demand upon the leaseholder to release it of record. The leaseholder refused. *Held*, that judgment of cancellation, and for statutory damages and attorney's fees, was properly decreed in plaintiffs' favor.

2. Same—*Lease Terminated—Duty of Assignee to Clear the Record*. Where an oil and gas lease was for a term dependent upon future contingencies and not for a definite term ascertainable from a mere inspection of the record, and such lease was recorded, the admitted assignee of such lease has the duty of clearing the record when the contingencies transpire which operate to terminate or forfeit the lease; and this duty may not be avoided because the assignment was not likewise recorded.

Appeal from Franklin district court; Charles A. Smart, judge. Opinion filed January 7, 1922. Affirmed.

*W. B. Pleasant,* of Ottawa, for the appellant.
*Wilbur S. Jenks,* of Ottawa, for the appellees.

The opinion of the court was delivered by

Dawson, J.: This was an action to cancel an oil and gas lease.

On June 11, 1914, the plaintiffs leased to defendant's grantors the gas and oil rights on 97 acres of land for one year and as much

longer as gas or oil should be found in paying quantities. The consideration was a dollar in cash, one-seventh of any oil production, and $50 per annum on any well producing gas in sufficient quantities to justify marketing, together with free gas for plaintiffs' household use. It was also provided that if a well was not completed within 60 days, unavoidable accidents and delays excepted, the lease should become null and void unless the lessee should pay $100 for each six months' delay in completing a well. The contract also bound the successors of the lessee to the terms of the lease.

The lease was duly acknowledged and recorded.

The 97 acres was in two fields or tracts. After a "dry well" had been drilled on the west 57 acres, the lessees quitclaimed that tract to the plaintiff lessors. Gas production was profitably developed on the east 40 acres and this continued for three or four years. In 1917 this lease was acquired by defendant. In 1918 the gas pressure became very low and in January, 1919, production entirely ceased.

Plaintiffs' petition to cancel the lease, filed on April 29, 1920, some 15 months after production ceased, alleged the pertinent facts, set up a copy of the lease, and alleged that on May 1, 1919, they had duly notified the defendant of the termination and forfeiture of the lease and demanded that it be canceled of record. Judgment of forfeiture and cancellation was prayed for, together with the statutory damages and for a reasonable attorney's fee.

Defendant's answer alleged full compliance with the terms of the lease, the payment of rental until April, 1919, when its tender of rent was declined by plaintiffs, and that the plaintiffs had greatly wasted the gas furnished them for household use to defendant's damage, etc. Defendant also alleged that the lease was valid and in full force and that it was the owner of it.

The trial court made findings of fact, all favorable to plaintiffs:

"One well only was drilled upon this lease, and it produced gas, but for some time prior to the notice given to defendants by the plaintiffs . . . the well ceased to produce gas, and gas was not then and has not since been found in paying quantities."

Judgment for plaintiffs was entered, canceling the lease, and for the statutory damages of $100 for defendant's failure to release it of record on plaintiffs' demand, and for an attorney's fee and costs.

Defendant appeals, contending among other matters that the lease was not subject to forfeiture.

The lease according to its terms was to endure "for one year and as much longer as oil or gas is found in paying quantities." That term expired when the production of gas ceased in January, 1919. The lease provided that $100 should be paid for each six months' delay in the completion of a well, but that had reference to the well which the lessees undertook to begin within sixty days after the contract was executed, which was in June, 1914. The $100 to be paid for each six months' delay in completing a well cannot be distorted into a stipulation that the lease might thus be kept alive after gas or oil production had succeeded and endured for a season and had thereafter terminated. The only difference between this lease and the one considered in *Elliott v. Oil Co.*, 106 Kan. 248, 187 Pac. 692, is that the Elliott lease was to expire in "sixty days after producing and drilling should cease," while here the lease was to endure no longer than oil or gas "is found in paying quantities."

Defendant mixes its argument. It says, "the lease is either a valid lease yet, or it has expired," and that "the statute allows no penalty for not releasing an expired lease." We do not thus construe the statute. The lease was recorded. The end of its term could not be ascertained from an examination of the record because its termination or forfeiture depended upon facts which should or should not transpire thereafter. When the facts did transpire which brought about a forfeiture or termination of the lease, the defendant's duty to clear the record became mature and absolute. Defendant failed to discharge that duty, notwithstanding plaintiffs' demand in writing. This subjected it to the liability prescribed by the statute. (Gen. Stat. 1915, §§ 4994, 4995.)

The refusal of plaintiffs to accept $25 tendered on April 28, 1919, is of no significance. The lease contained no provision to which this $25 had any conceivable relation. It had no relation to the $100 semiannual payment for delay, nor could it be rental on a producing well because there was no producing well. In *Harter v. Edwards*, 108 Kan. 346, 349, 195 Pac. 607, it was said:

"The contract prescribed the terms which kept it [the lease] alive and fixed the conditions which terminated it.".

No significance can be attached to defendant's difficulties about getting fuel and men to continue operations nor because of the delays occasioned by muddy grounds. The trial court was not impressed by the evidence on that score. There was nothing done

to develop another well after the end of production in the existing well was in sight. Bad weather, mud, lack of fuel and shortage of labor might excuse some delay and would have excused delay in the completion of the well stipulated to be undertaken or projected within 60 days of the commencement of the lease term—for the lease contract so provided; but these would not suffice to extend the term after the expiration of its stipulated duration.

A final contention is that there was no evidence that the assignment of the lease was on record. Defendant claimed to be the owner of the lease and to be in possession of it. Whether the assignment to defendant by the original lessees was recorded or not, when its rights under that assignment ceased it was defendant's duty to clear the record, so that the lessors would not be annoyed with a cloud on their title. It failed to do so after due notice and demand, and it therefore incurred the liabilities imposed by the statute.

The judgment is affirmed.