No. 27,160.

J. D. KAHM and MARY E. KAHM, *Appellees*, v. THE ARKANSAS RIVER GAS COMPANY, *Appellant*.

SYLLABUS BY THE COURT.

1. MINES AND MINERALS—*Oil and Gas Lease—Cancellation After Expiration of Term for Nonuse—Right to Jury Trial*. Where a gas and oil lease on a quarter section of land was to endure "for a term of one year from its date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee," a suit to cancel the lease and to quiet the title of lessors in possession on the ground that the year had expired and gas production had ceased was not an action where a jury trial was demandable as a matter of right.

2. SAME—*Oil and Gas Lease—Cancellation After Expiration of Term for Nonuse*. Under a lease for the term set out in syllabus 1, where a gas well drilled by lessee produced a large volume of gas which was marketed through a pipe-line nearby, but where the gas production and gas pressure of the well gradually declined until the gas would no longer flow into the pipe-line which was the only available outlet for the gas and furnished the only existing market, and where all production of gas on the leased premises wholly ceased with no immediate prospect of its restoration, and where the lessee's only prospect of resumption of gas production depended upon the successful coördination of various prospective but unassured projects and possibilities, the lessors were entitled to a decree of cancellation of the lease in accordance with its specified terms and pertinent equitable relief.

3. SAME—*Oil and Gas Lease—Cancellation After Expiration of Term for Nonuse—Authority of Court of Equity*. A court of equity has no power to extend a gas and oil lease beyond the term specified in the written contract of the parties, nor are the lessors required to content themselves with damages neither pleaded nor tendered, in lieu of their right to a judgment ordering that the lease be canceled and the lessors' title quieted.

4. SAME—*Trial Generally*. Other objections to the judgment considered and not sustained.

Appeal from Sumner district court; OLIVER P. FULLER, judge. Opinion filed February 12, 1927. Affirmed.

*W. L. Cunningham, D. Arthur Walker*, both of Arkansas City, *Joseph S. Clark, Percy H. Clark, Henry A. McCarthy, Paul C. Wagner*, and *Andrew B. McGinnis*, all of Philadelphia, Pa., of counsel.

*Albert Faulconer, Kirke W. Dale* and *C. L. Swarts*, all of Arkansas City, for the appellees.

Contracts, 13 C. J. p. 525 n. 39. Mines and Minerals, 40 C. J. pp. 1089 n. 53, 1090 n. 67, 1091 n. 77, 1092 n. 84.

The opinion of the court was delivered by

DAWSON, J.:  Plaintiffs brought this action to cancel an oil and
gas lease on a quarter section of land and to quiet their title thereto
against the Arkansas River Gas Company, defendant, to whom
plaintiffs on February 7, 1922, had leased the premises and other
lands—

"For a term of one year from its date, and as long thereafter as oil or gas,
or either of them, is produced from said land by the lessee."

Defendant relinquished its rights to the other lands covered by
this lease, and in October, 1922, on the land in question it drilled and
brought in a gas well of large production, with the result that plain-
tiffs received very substantial royalties therefrom for a number of
months.  The gas flow from the well gradually declined, however,
and eventually it ceased altogether, and in May, 1925, it was dis-
connected from the pipe-line through which its product had found a
market.

Some six months after production ceased, in October, 1925, this
action was begun.  Plaintiffs' petition recited the foregoing facts
and alleged that defendant had refused their demand that the lease
be canceled of record.  Plaintiffs prayed for a decree of cancellation,
quiet title, and general relief.

Defendant answered at length, admitting plaintiff's ownership of
the land, the execution of the lease, its drilling of a gas producing
well in 1922, and defendant's cancellation of so much of the lease as
affected plaintiffs' other lands on which no drilling had been done.
The answer traversed certain other allegations of the petition, and
pleaded that gas production from defendant's well totally ceased in
May, 1925, because the only pipe-line in the locality where it could
market its gas had become a high-pressure line to take care of newly-
discovered gas wells of such high rock pressure that—

"The Kahm well on the lease in controversy, being weakened by depletion,
the gas did not have sufficient pressure, and could not be forced to feed into
the pipe-line against the higher pressure from the other fields, and in May,
1925, it stopped producing entirely owing to this fact, and has not had suffi-
cient pressure to feed anything into the pipe-line during the months of June,
July, August, September and October, 1925."

Defendant further alleged that as soon as it discovered that the

depleted gas pressure of the Kahm well prevented it from feeding into the pipe-line, it set about the work of finding a new customer to whom it might market its gas, and considered the problem of installing an auxiliary compressing device to make delivery of gas from defendant's well into the pipe-line, but at the time of filing defendant's answer it had not been able to obtain or install such a device; that defendant had also sought another outlet for its gas, and had considered the feasibility of building a pipe-line into Arkansas City some miles from the well, but to render that project practical, owing to the capital investment required, it would be necessary to coöperate with other parties and drill additional wells and defendant had prosecuted many such negotiations and endeavors in good faith, but its efforts to find or make another outlet and market for the potential production of defendant's gas had been hindered and practically stopped by the bringing of this action. Defendant alleged that it had expended about $30,000 in drilling this gas well, and defendant had no way to recoup such expenditure except—

"By finding and establishing a new market for gas different from that now existing, and by discovering, developing and producing an additional supply of gas from the Kahm lease and other leases in that neighborhood owned by this defendant, and by cancellation of this lease this defendant's investment therein would be wholly lost and destroyed, and plaintiffs would have and recover full benefits of said well without any expenditure therefor whatever."

Defendant further alleged:

"At this time the defendant is working on the Kahm well to see if there is any way to rehabilitate it, and get it in a producing condition once more, and of sufficient force to deliver the gas into the present pipeline connection. . . . That at all times this defendant has attempted, in good faith and with all reasonable diligence, to develop said lease and keep and maintain the same as producing property."

On the issues thus joined the cause was tried. Defendant's demand for a jury trial was denied. The evidence developed no sharply controverted matters of fact. Plaintiff testified that in the first twelve months of production his royalties aggregated $2,000 to $2,500. After that time—

"The well began to go down the latter part of '23. It continued to go down on through '24. I got $7 one month. I think I got $12 in January, kept going down until May, $2.50. . . . The gas just quit about May, 1925; I didn't get any more royalty. They haven't done anything about the well so far as I know. It was open part of the time. . . . I sent the Arkansas River Gas.

Kahm v. Arkansas River Gas Co.

Company a release [September 11, 1925] with a return envelope, they never answered. . . . The Arkansas River Gas Company's man came down and disconnected the well about three months ago, after this suit was brought. There is no meter or register at the well. . . . I have an opportunity to lease this property if it wasn't for this suit."

In its appeal to the discretionary powers of the trial court in matters of equity, defendant's evidence covered the history of the well's development, that defendant had spent $23,356.70 in drilling it and $4,000 in incidental expenses; that the well would probably produce 1,500,000 cubic feet of gas per day, open flow, which would put into a pipe-line for marketable purposes from 500,000 feet to 700,000 feet per day; that such amounts had been fed into the pipe line before it became a line of such high pressure that gas from this well would not flow into it. Defendant's vice president also testified as to his company's efforts to develop another market for the gas in the Kahm well, and that the only chance for a market would be by getting a franchise to supply gas to some town like Geuda Springs, Wellington, Winfield or Arkansas City at varying distances of 8 to 25 miles away. He further testified.

"The cost of constructing a pipe-line to Arkansas City was $75,000 to $80,000, which of course could not be done on the gas from this well. An additional supply must be obtained. The defendant entered into a contract with Mr. Ricketts, who had a franchise from Geuda Springs, but a pipe-line had to be built from the well to Geuda Springs, before the gas could be used. The defendant tried to arrange at Arkansas City to sell a sufficient volume of gas to make it pay to build a pipe-line. A larger supply of gas was necessary to justify such an expenditure. A contract was entered into with Mr. Perry [of the Arkansas City refinery] to drill a deep test on this group of leases, including the Kahm lease, the location to be determined by the geologist, but the carrying out of this contract was held up on account of this suit."

The trial court gave judgment for plaintiffs, holding that prior to the commencement of this suit the lease had expired by its express terms, and decreed that it should be canceled and that plaintiffs' title should be quieted against defendant, and directed that the register of deeds enter on the margin of the record of the lease the words: "Canceled by judgment of the district court in civil action No. 14170," and subscribe his signature thereto. By other terms of the judgment defendant was given right of entry on the plaintiff's land for 90 days for the purpose of pulling the casing from the well and for removing its property from the premises.

Defendant appeals.

The first error assigned relates to the denial of defendant's demand for a jury trial. This suggestion is based on the assumption that this action was to recover possession of the leased premises. Not so, however; no issue over possession of the premises was raised by the pleadings. Plaintiffs alleged their occupancy—their possession—and asked that their title be quieted. The testimony without material dispute established plaintiffs' possession. In that and other material respects, this case was unlike that of *Parris v. Oil Co.*, 108 Kan. 330, 195 Pac. 879. Plaintiffs set up a copy of the lease which specified when the lessee's rights thereunder should cease and determine. So long as oil or gas was produced on the leased premises the lease was to run; when production ceased the lease was to expire. Production wholly ceased in May, 1925. The contract of lease did not anticipate the cessation of production because of low gas pressure, nor specially provide for leniency or forbearance towards the lessee under such circumstances. What the parties to the lease failed to bargain about and include in the written terms of their contract cannot be supplied by the interference of a court on the specious excuse of exercising its jurisdiction in equity. It was neither pleaded, proved, nor argued that some intended provision of the leasing contract was inadvertently omitted, and that the lease should be reformed in equity. This case differs in no material respect from others which we have had to consider. In *Harter v. Edwards,* 108 Kan. 346, 195 Pac. 607, where a judgment canceling an oil and gas lease was under review, this court said:

"The contract prescribed the terms which kept it alive and fixed the conditions which terminated it. These conditions of the contract were not observed by the defendants and they have no right to complain of the action of the plaintiffs in demanding that the contract be enforced as it was written. (*Doornbos v. Warwick,* 104 Kan. 102, 177 Pac. 527; *Gasaway v. Teichgraeber,* 107 Kan. 340, 191 Pac. 282.)" (p. 349.)

In *Warner v. Oil & Gas Co.,* 114 Kan. 118, 217 Pac. 288, where an oil and gas lease was to endure for three years (until May 15, 1921), "and as long thereafter as oil or gas or either of them is produced from said land by the lessee," and the trial court conditionally canceled the lease, this court said:

"Inasmuch as after the expiration of the three years the lease by its express terms was to last only as long as oil or gas was produced from the land by the lessees a judgment declaring it at an end was justified by the cessation of production." (p. 119.)

In *Elliott v. Oil Co.,* 106 Kan. 248, 187 Pac. 692, which was an

Kahm v. Arkansas River Gas Co.

appeal from a judgment canceling an oil and gas lease on which defendant at great expense had drilled a gas well which would produce a large volume of gas if a market were available for its sale, this court said:

"The contract did not provide for the contingency that gas wells might be developed which would be unproductive for want of a market. As the matter stands, the lessor's property is no more productive to him than if the lessee had found no gas. And while the lessees have expended much money to drill these gas wells, the wells are of no present or prospective value to them. In such a situation the lessor seems to be entitled to a termination of the lease under the plain text of the contract. Cleared of this lease, it may be possible for the lessor to make other arrangements to secure production." (p. 252.)

In *Caylor v. Oil Co.*, 110 Kan. 224, 226, 203 Pac. 735, it was said:

"The lease according to its terms was to endure 'for one year and as much longer as oil or gas is found in paying quantities.' That term expired when the production of gas ceased in January, 1919. . . . The only difference between this lease and the one considered in *Elliott v.Oil Co.*, 106 Kan. 248, 187 Pac. 692, is that the Elliott lease was to expire in 'sixty days after producing and drilling should cease,' while here the lease was to endure no longer than oil or gas 'is found in paying quantities.' . . . When the facts did transpire which brought about a forfeiture or termination of the lease, the defendant's duty to clear the record became mature and absolute."

We have not failed to note the more or less analogous cases from other jurisdictions which the diligence of counsel has brought together for our perusal; but with due respect thereto we are bound to follow our own precedents, and we find it impossible to distinguish in principle the case at bar from the analogous cases cited above.

Defendant presses upon us the evidence touching its efforts to find another market for the gas in the Kahm well. That evidence might be quite persuasive if this were a case for the exercise of the trial court's equitable discretion on the point whether some implied covenant of a gas lease had been so grossly violated as to warrant a forfeiture where the time it was to run had not yet expired. Such cases were *Howerton v. Gas Co.*, 81 Kan. 553, 106 Pac. 47; *id.*, 82 Kan. 367, 108 Pac. 813; *Alford v. Dennis*, 102 Kan. 403, 170 Pac. 1005; *Brown v. Oil Co.*, 114 Kan. 166, 217 Pac. 286.

A court of equity has no power to extend a lease beyond the term which the parties themselves have fixed by their written contract. We have considered this question in *Elliott v. Oil Co.*, supra, and here as there we find it impossible to deny to plaintiffs the relief to which their ownership and right of possession entitle them, especially when the rights which they seek to enforce are in literal

accord with the contract of lease which defined and limited the rights of defendant.

It is urged that plaintiffs could be adequately compensated in damages? Damages for what? For an arbitrary judicial extension of the lease term? There is no sound rule of law or equity to justify any such proposition. There was no such issue raised by the pleadings. When gas production wholly ceased in the Kahm well in May, 1925, because of low pressure and want of a market, defendant did not tender to plaintiffs any consideration as damages or rent for an extension of the lease. It made no such tender in its pleadings. This point lacks merit.

Another objection to the judgment is that plaintiffs failed to give notice to defendant of their intention to institute this action. The objection is not good; it was not pleaded; and plaintiffs' claim for damages under the statute which requires the giving of such notice (R. S. 55-202, 55-206) was withdrawn. Notice was not a prerequisite to the commencement of this action. (*Elliott v. Oil Co.*, supra, syl. ¶¶ 1, 2.)

It is argued that a mere temporary suspension of gas production from a well for any one of a variety of possible causes would not warrant the summary cancellation of a lease thereon. Probably not. But here it was no mere temporary suspension of production. Production had progressively dwindled for many months and eventually ceased altogether, with no hope of its renewal except in the possibility of creating another market, and by the construction of another pipe-line, and by the development of other gas wells to be grouped with the well on plaintiffs' land, and by the successful coördination of all these possibilities and projects.

It is also contended that the lease could not be forfeited while the lessees were still receiving benefits from it. As an abstract proposition of law, that contention is sound. But this was not an action to forfeit an existing lease. And it is not in accord with the accredited evidence that plaintiffs were getting any benefit from it at the time the action was begun. By the terms of the lease plaintiffs were to receive gas for domestic consumption from any productive gas well drilled on their premises. This was never supplied because prior to the execution of the lease, plaintiffs had been getting such a domestic supply for another nearby gas well on other premises, and after this gas well was drilled defendant chose to have plaintiffs continue to get their domestic supply from the same

American Nat'l Bank v. Marshall.

source and to pay for it rather than have that supply drawn from the Kahm gas well. At some time prior to the institution of this action, the arrangement whereby defendant had been paying for plaintiffs' domestic supply of gas had been terminated.

This court discerns no just ground to disturb the trial court's judgment, and it is therefore affirmed.