No. 38,528

VICTOR B. TATE, CECIL A. TATE, FLORENCE TATE FLETCHER and ROLAND H. TATE, *Appellants,* v. (Josiah S. Wolf, et al.) STANOLIND OIL AND GAS COMPANY, a corporation, *Appellee.*

(240 P. 2d 465)

Opinion
filed January 26, 1952.

*Roland H. Tate,* of Garden City, argued the cause, and *Logan N. Green* and *Daniel R. Hopkins,* both of Garden City, were with him on the briefs for the appellants.

*George Stallwitz,* of Wichita, argued the cause, and *W. F. Lilleston, George C. Spradling, Henry V. Gott, Ralph M. Hope* and *Robert J. Hill,* all of Wichita, were with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action by landowners to quiet title to land on which one of the defendants claimed to hold a valid oil and gas lease. Judgment was rendered quieting title against all defendants save and except the alleged owner of such lease. Plaintiffs appeal from that part of the judgment which failed to quiet their title against the lease.

Appellants are: Victor B. Tate, Cecil A. Tate, Florence Tate Fletcher and Roland H. Tate. Appellee is the Stanolind Oil and Gas Company, the alleged owner of the lease.

The lease contained the customary provision for payment of annual cash rentals in lieu of drilling. Appellants admit such rentals were paid but nevertheless contend the title should have been fully quieted for the reason there was no production during the primary term of the lease and the lease, therefore, expired by its own terms.

The lease was executed October 24, 1937. The habendum clause provided:

"It is agreed that this lease shall remain in full force for a term of Ten Years from this date, and as long thereafter as oil or gas, or either of them, is produced from said land by the lessee."

The lease further provided:

"If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with the like effect as if well had been completed within the term of years herein first mentioned."

The primary ten-year term of the lease expired October 24, 1947. The first and only well, a gas well, was completed before termina-

tion of the primary term, namely, on September 15, 1947. It is admitted the well would produce in paying quantities. No production, however, was had from the well during the primary term. The well was drilled at a cost of $21,985.09. It was located in the Hugoton gas field. The lease covered a half section of land. Under the conservancy act the extent of production from the well was subject to proration orders of the state corporation commission, to be referred to hereafter as the commission. On September 24, 1947, appellee made application to the commission for a well allowable and a hearing thereon was had October 13, 1947. At such hearing appellee advised the commission it had received favorable assurance from the Colorado Interstate Gas Company, to be referred to hereafter as Interstate, that it would connect its pipe line facilities to the well and would take the gas therefrom in accordance with the terms of a contract fully negotiated but not yet signed by the parties. The application was taken under advisement by the commission.

On the first day following the expiration of the primary term of the lease the then owners of the land demanded, in writing, a release of the lease which appellee refused to execute. On December 12, 1947, appellants instituted the instant action. Before the commission assigned an allowable for the well and on November 5, 1947, appellee informed the commission that Interstate would not make a connection with the well and take the gas. Appellee, therefore, requested permission to withdraw its application for an allowable, without prejudice.

By reason of the refusal of Interstate to take the gas appellee on January 12, 1948, filed an affidavit with the commission in which it complained about Interstate's refusal to take the gas. The affidavit set forth, in substance: Interstate was the only pipe line in the vicinity for the transportation of gas and it refused to take the gas in accordance with appellee's tender, either under the fully negotiated but unsigned contract or at the prevailing price in the Hugoton gas field; appellee had at all times been and was then ready, willing and able to construct a line from the well to the pipe line of Interstate; if Interstate should continue to refuse to take the gas appellee requested the commission to nevertheless assign the gas allowable to the well.

On the day after filing such affidavit with the commission, copy of which affidavit appellee served on Interstate, the latter advised

appellee orally it would connect with the well and take the gas. Thereupon appellee withdrew its affidavit from the commission and filed an application for an order fixing such allowable. On January 26, 1948, appellee and Interstate entered into a written contract for the sale and purchase of the gas from the well. On February 25, 1948, the commission fixed an allowable and appellee connected the well to its pipe line. Appellee presented a division order to appellants whereby it offered to pay appellants its contract share of the gas but appellants refused to sign the same.

The trial court found generally in favor of appellee, found appellee had a valid and subsisting oil and gas lease and rendered judgment accordingly. Appellants' motion for a new trial was overruled and concerning that order and the judgment against them appellants complain.

Counsel for the parties devote considerable space in their briefs to a discussion of equitable doctrines, implied covenants of reasonable time within which to obtain a market after discovery of oil or gas in commercial quantities within the primary term, whether gas could be produced at all without an allowable for the well first having been obtained from the commission and whether the fixing of an allowable for a well by the commission is, by operation of law, made an integral part of the lease contract insofar as right to produce is concerned.

We prefer to examine first the agreement the parties have seen fit to execute, the lease contract itself. What did the parties intend thereby? That is the primary question. All others are secondary. Courts do not make contracts for the parties. They interpret them. If the agreement of the parties discloses their intent that is sufficient. It is only when such intent does not appear with reasonable certainty that other principles may be invoked in aid of a just solution of a controversy.

The two pertinent provisions of the instant lease contract have been quoted. The first is the habendum clause which specifies the term of the lease as one for ten years from its date. That, however, is only the primary term. The same clause provides the lease shall remain in force "as long *thereafter* as oil or gas, or either of them, is *produced* from said land. . . ." (Our italics.) Manifestly the last above provision contemplates production during the primary term. Otherwise the phrase "and as long thereafter" becomes meaningless. We have, therefore, held an habendum clause such

as the instant one requires actual production during the primary term as distinct from mere exploration or discovery of oil during such term. (*Elliott v. Oil Co.*, 106 Kan. 248, 187 Pac. 692; *Baldwin v. Oil Co.*, 106 Kan. 848, 189 Pac. 920; *Perkins v. Sanders*, 109 Kan. 372, 198 Pac. 954; *Caylor v. Oil Co.*, 110 Kan. 224, 203 Pac. 735; *Warner v. Oil & Gas Co.*, 114 Kan. 118, 217 Pac. 288; and for a related case see, also, *Berline v. Waldschmidt*, 159 Kan. 585, 156 P. 2d 865.)

We need not unduly labor this particular point. Without attempting to analyze or cite decisions from other jurisdictions we frankly concede there is a respectable contrary minority view in West Virginia, Texas, Oklahoma, Kentucky, Wyoming and perhaps in a few other states. Careful scrutiny of cases from those jurisdictions indicates some variance in the basis of the minority view. We believe it is accurate to say some of the minority decisions appear to be predicated on a number of theories. In concluding the primary term of the lease is extended beyond its designated primary period some of those decisions are based on the theory of rentals fully paid, some on the theory of a vested interest in the lessee after discovery, some on the equitable relief from forfeiture theory and others on the doctrine of reasonably diligent operation after discovery. The great weight of authority, however, appears to be in harmony with the view that actual production during the primary term is essential to the extension of the lease beyond that fixed term. This, at least, is true unless the lease contains some additional provision indicating an intent to extend the right to produce beyond the primary term.

We now turn to the second provision in the lease contract commonly referred to as the "drilling clause." It reads:

"If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with the like effect as if well *had been completed* within the term of years herein first mentioned." (Our italics.)

From this provision, standing alone, it clearly appears that even though a well is only commenced during the primary term it may be completed thereafter with reasonable diligence and dispatch. Obviously if on completion of drilling operations oil or gas is found in paying quantities the lessee, under this clause, is not expressly required to produce or market the oil or gas immediately. And, of

course, that might be wholly impossible. He would, however, be required to do so within a reasonable time. But even if the drilling clause reasonably could be interpreted as requiring both production and marketing immediately upon completion of the well it is nevertheless clear the necessity therefor was extended beyond the fixed primary term.

There is also some basis for the view that under the particular phraseology of the drilling clause the parties placed their own interpretation, in this particular lease, on the meaning of the word "production" as used in the previously considered habendum clause. It will be observed the drilling clause states that if oil or gas is found in paying quantities from a well commenced during but, with reasonable diligence and dispatch, not completed until after the primary term the lease shall continue and be in force with like effect "as if well *had been completed* within the term of years herein first mentioned." (Our italics.) The drilling clause does not say the lease shall be in force with like effect as if the well had been *producing* within the primary term.

Considering the habendum and drilling clauses together it seems to us it would be wholly inconsistent to hold the lessee, under this lease, is permitted to obtain production with diligence and dispatch after the primary term has expired, if the well is commenced but not completed during the primary term, but that he would not be permitted to obtain production within a reasonable time after the primary term if a well were completed during the primary term, as, for example, on the last day of such term.

Reasonable rather than unreasonable interpretations are favored by the law. (*Brooks v. Mull*, 147 Kan. 740, 747, 78 P. 2d 879.) The meaning of a contract should never be determined by a critical analysis of a single or isolated provision but should always be ascertained by a consideration of all pertinent provisions. (*Heckard v. Park*, 164 Kan. 216, 219, 188 P. 2d 926, 175 A. L. R. 605, 617.) Where ambiguity or uncertainty is involved the intention of the parties is not ascertained by resort to a literal interpretation of an isolated provision but by a consideration of the instrument as a whole, the object sought to be obtained and other circumstances, if any, which tend to clarify the real purpose and intent of the parties. (*Heckard v. Park*, supra.) A practical and equitable construction of ambiguous terms of a contract should be adopted. (*Berg v. Scully*, 120 Kan. 637, 245 Pac. 119; *Francis v. Shawnee Mission Rural High School*, 161 Kan. 634, 640, 170 P. 2d 807.)

Applying the foregoing principles we think both the habendum and the drilling clause reasonably may be made operative. The first clause fixes the term of the lease as ten years from its date. Under it the lessee may hold the lease for that period by merely paying the prescribed annual rentals. If, however, that is all he does the lease expires by its own terms at the end of its fixed primary term. On the other hand if drilling operations on a well are completed during the primary term and oil or gas is discovered in paying quantities, or if a well is commenced during such term and completed thereafter with diligence and dispatch the lessee, in either event, must produce oil or gas within a reasonable time or the lease will expire and be subject to cancellation. This we think is a fair, a reasonable, construction of the two clauses involved.

The cases from this and other jurisdictions cited by counsel for the respective parties based on various theories mentioned early herein have been examined together with others not cited. A lengthy review thereof would not alter the conclusion here reached in view of the two pertinent lease provisions. No other Kansas decision is cited in which the drilling clause extended the right to produce within a reasonable time after termination of the primary term, where a well was commenced during such term, and our research has disclosed none.

Appellee relies strongly on the rather recent case of *Christianson v. Champlin Refining Co.*, 169 F. 2d 207 (1948), in which the time within which to market gas from a producing well under a Kansas lease was involved. The lease contained two provisions of similar import to those in the instant case, if construed together. In that case the well was commenced on the last day of the primary term and completed thereafter. By reason of inability to obtain a pipe line connection the gas was not marketed until fifteen months after completion of the well. The court reviewed some of the Kansas cases, but none of those first mentioned in this opinion, and cited some from certain other jurisdictions. It said:

"The general rule is that where production results from drilling operations and the operator is unable to market the product immediately on account of lack of an available market or of pipe line connections, no forfeiture results if, by the exercise of due diligence on the part of the operator, the well is equipped and a market is obtained within a reasonable time." (p. 209.)

In view of the two pertinent lease provisions we approve the statement as applied to the facts of that case and to those in the instant case. Under those conditions we think it is a correct state-

ment of the general rule. In order to avoid confusion it may, however, be well to emphasize the statement would not be in harmony with the Kansas cases first cited herein or the weight of authority generally if the lease had contained only a primary clause which fixed the time without qualification within which oil or gas must be produced.

We are not unmindful of the place and purpose of the habendum, the term clause, and the drilling clause in oil and gas leases. We recognize the rule that in case of irreconcilable conflict between them the habendum clause ordinarily controls. Where, however, as previously indicated, the clauses can be harmonized so as to give effect to each of them that should be done. (*Hopkins v. Zeigler*, 259 F. 43, 47; *Lester v. Mid-South Oil Co.*, 296 F. 661, 663; 58 C. J. S., Mines and Minerals, § 198.) Able treatment by the authorities on the various views of the subject under consideration may be found in 2 Summers Oil and Gas, perm. ed., §§ 293, 300, 303; Mills and Willingham, Law of Oil and Gas, §§ 73, 74, 75; 1 Thornton's Law of Oil and Gas, 4th ed., § 142; 24 Am. Jur., Gas and Oil, § 70; 58 C. J. S., Mines and Minerals, §§ 199, 202 b. (2), 202 c. (2) (b) bb. In the light of facts in *Perkins v. Sanders*, 109 Kan. 372, 198 Pac. 954, often cited by textwriters, that case is not out of harmony with the conclusion reached in the instant case.

It is impossible to lay down an accurate general rule with respect to what constitutes production or marketing within reasonable time in every case. Whether either has been so obtained must be left to the particular facts of cases as they arise. (1 Thornton's Law of Oil and Gas, 4th ed., § 144.)

Was production obtained within a reasonable time after completion of the well? The primary term ended October 24, 1947. The well was completed at a substantial cost about five weeks before the primary term ended. Also, a month prior thereto appellee made application to the commission for a well allowable. Eleven days before the expiration of the primary term a hearing was had on such application before the commission. At that time appellee advised the commission of its arrangements with Interstate to take the gas. The commission took the application under advisement. It did not announce a decision before the primary term ended. Interstate refused to take the gas. Appellee promptly proceeded before the commission to compel Interstate to take it. Interstate then agreed to do so. On February 25, 1948, the commission fixed

the well allowable and Interstate connected its pipe line. Under these circumstances we shall not say the district court erred in resolving the question of producing or marketing within reasonable time in appellee's favor.

The judgment is affirmed.