### No. 40,766

SAM H. BRACK, *Appellee,* v. WILLIAM McDOWELL, et al., *Appellees,* and LYMAN J. BISHOP, RUBY BISHOP ROSIER, LAWRENCE L. BISHOP, HELEN BISHOP BEASLY, DON L. BISHOP, MAXINE BISHOP RAMSEY and HARRY C. KULLMAN, *Appellants.*

(320 P. 2d 1056)

Opinion filed January 25, 1958.

*Glenn J. Shanahan*, of Wichita, argued the cause, and *Dale M. Bryant, Morris H. Oundiff, Garner E. Shriver, Donald E. Lambdin* and *Orlin L. Wagner*, all of Wichita, were with him on the briefs for appellants.

*J. B. McKay*, of El Dorado, and *Robert Martin*, of Wichita, argued the cause, and *George B. Collins, Oliver H. Hughes, K. W. Pringle, Jr., William F. Schell, Thomas M. Burns* and *George R. Docking*, all of Wichita, and *James B. McKay, Jr.*, of El Dorado, were with them on the briefs for appellees Sam H. Brack, Earl E. Strimple and Ann Davis Strimple.

The opinion of the court was delivered by

FATZER, J.: This was an action by Sam H. Brack to quiet title to the mineral interest in real estate in Butler County, Kansas, and to cancel an oil and gas lease and various assignments of oil and gas interests, or in the alternative, for a partition of the mineral interest. The lessee disclaimed any interest in the property, and the owners in fee of the "surface" of the real estate, Earl E. Strimple and Ann Davis Strimple his wife, by settlement with the owner of the mineral interest became aligned with him to quiet title. Other defendants (appellants) are the heirs, and assert themselves to be the successors in interest of the original assignees and the owners of an instrument entitled "Assignment of Royalties and Agreement" (assignment agreement), and claim to own the oil and gas lease in question and to have the right to proceed within a reasonable time to carry out its provisions. Trial was by the court, which rendered judgment quieting title to the mineral interest in Brack and title to the "surface" of the real estate in the defendants Strimple, and canceled the assignment agreement and various other oil and gas instruments. Following the overruling of their motion for a new trial, the defendants have appealed.

The facts are not in dispute, and the action proceeded to trial on the pleadings and stipulations of the parties, the pertinent parts

of which are summarized as follows: L. G. Cardey and Margaret S. Cardey, his wife, were the owners of the real estate in question prior to May 29, 1914, and are the common source of title for all of the parties. On May 29, 1914, the Cardeys executed an oil and gas lease covering the north one-half of the southeast quarter and the southwest quarter of the southeast quarter of section 11, township 26 south of range 4 east, Butler County, Kansas, to W. M. McKnab for a term of five years and "as long thereafter as oil or gas, or either of them, is produced from said land." The lease was duly recorded, and passed by assignment to Cities Service Oil Company (Cities Service), which developed the property as hereafter detailed.

On August 4, 1916, the Cardeys executed the assignment agreement whereby they assigned and conveyed one-half of all their oil and gas royalties under the McKnab lease to E. A. Shriver, J. C. Kullman, E. S. Bishop and N. J. Bishop and warranted title unto the assignees and their heirs and assigns. A copy of the McKnab lease was attached to and made a part of the assignment agreement, which provided among other things that the assignees would have "the same rights and privileges possessed by said first parties (the Cardeys) under said lease," and further:

". . . that if at any time and for any cause whatever, said lease should be forfeited by the owners and holders thereof, then and in that case, said second parties shall at once become the owners of said lease and the same shall be and become the property of said second parties to this assignment; as well as the interests in and to the royalties this day purchased, by said second parties from said first parties, and said second parties in such event shall have the right to proceed within a reasonable time after becoming the owners of said lease, to carry out the provisions of said lease."

The Cardeys also assigned other royalty interests not here in issue.

By mesne conveyances Brack became the owner of the mineral interest in the north one-half of the southeast quarter of section 11, and defendants Strimple became the owners in fee simple of that real estate subject to Brack's mineral interest.

Within the primary term of the McKnab lease a large number of producing wells were drilled on both the north one-half of the southeast quarter and the southwest quarter of the southeast quarter of section 11, and oil was thereafter produced under the lease from both tracts until 1944, when all the wells located on the southwest quarter of the southeast quarter were plugged and abandoned and since that time no oil or gas was produced under the lease on that

40-acre tract, and no operations or development have been had since that time. Cities Service released that portion of the McKnab lease covering the 40-acre tract, but continued to produce oil from the north one-half of the southeast quarter of section 11 until May, 1955, when it ceased production on that property and plugged and abandoned all its wells. Cities Service advised the defendants the reason it ceased production was that oil could no longer be produced economically from the lease.

The present action was commenced March 15, 1956, and involves only the north one-half of the southeast quarter of section 11; the title and ownership of the southwest quarter of the southeast quarter of that section are in nowise involved. Following the commencement of this action, Cities Service disclaimed any interest in the north one-half of the southeast quarter and executed and filed of record a release of the McKnab lease.

The trial court found generally for Brack and the defendants Strimple and against the other defendants. It found that the terms of the McKnab lease expired as to the north one-half of the southeast quarter of section 11 and ceased to have any force or effect when the wells were abandoned in May, 1955, and since that time there have been no operations or development for oil or gas purposes of any kind or character on the premises. With respect to the assignment agreement the trial court found that it had expired; that it ceased to be of any force, validity or effect; and, that the defendants had no right or interest in the real estate. Pursuant to its findings, the trial court quieted and made absolute the titles of Brack and the defendants Strimple as against all other defendants, hence this appeal.

The defendants make no contention that the evidence does not support the findings of the trial court, but argue the assignment agreement conveyed one-half of all the oil and gas royalties under the McKnab lease with the express right that *if at any time and for any cause whatever*, the lease should be *forfeited,* the assignees, as owners, and the defendants as their successors, would at once become the owners of the lease and have the right to proceed within a reasonable time to carry out its provisions; that the clause of the assignment agreement quoted above was for the protection and security of the assignees and the defendants as their successors, against unlawful termination by the lease owners; and, that when Cities Service ceased producing from the north one-half of the

southeast quarter the defendants had the right to proceed within a reasonable time to secure production.

Brack and the defendants Strimple argue that the lease was not forfeited within the meaning of that word as used in the lease and in the assignment agreement and assert that it expired by natural cessation of production, and that the clause of the assignment agreement never became operative, since Cities Service, as the lessee operator, did not violate any of the express or implied covenants of the lease but ceased production solely because oil could no longer be produced in paying quantities from the lease.

As preliminary, we note defendants make no contention that the assignment agreement conveyed any interest in the minerals in place; they concede their rights under the lease to be those of "royalty" only, which is generally defined as compensation paid to the lessor or his assigns by the lessee as provided in the lease and does not include a perpetual interest in and to the oil and gas in place. (*Bellport v. Harrison,* 123 Kan. 310, 255 Pac. 52; *Burden v. Gypsy Oil Co.,* 141 Kan. 147, 40 P. 2d 463; *Lathrop v. Eyestone,* 170 Kan. 419, 424, 227 P. 2d 136.)

Defendants' contention that if at any time and for any cause whatever the lease should be forfeited they immediately become the owners of it with the right to proceed within a reasonable time to carry out its provisions, is, necessarily, based upon the meaning ascribed to the word "forfeited" as used in the assignment agreement. As previously indicated, the lease was made a part of the assignment agreement and became a part of that instrument. The lease contained a forfeiture clause, as follows:

"Upon failure of the lessee to comply with conditions of this lease, or to make any of the payments above provided for delay in completing a well on the date upon which the same shall become due, the lessor shall have a right to declare a forfeiture on this lease if such payment be not made within 30 days after written notice to pay the same."

While we do not here intend to define the word "forfeiture" as used generally in the law of oil and gas in this jurisdiction, we think it clear that when the parties incorporated the lease as a part of the assignment agreement they intended the word "forfeited" as used in the assignment agreement to refer to the conditions of forfeiture provided in the lease. It is a cardinal rule of construction that instruments must be interpreted in the light of their own peculiar provisions and every provision must be construed, if possible, so as

to be consistent with every other provision and to give effect to all. (*Gas Co. v. Neosho County,* 75 Kan. 335, 89 Pac. 750; *Maltby v. Sumner,* 169 Kan. 417, 219 P. 2d 395; *Lathrop v. Eyestone,* supra.) Thus, the defendants' right to become the owners of the lease and to carry out its provisions was dependent upon the occurrence of events constituting conditions of forfeiture under the lease. The forfeiture clause specified two conditions: First, failure of the lessee to comply with the terms of the lease, and second, failure of the lessee to pay delayed rentals when due. Obviously, since the lease was fully developed during the primary term the second clause was inoperative, and the first clause, which included breaches by the lessee of express or implied covenants, was the only ground available for forfeiture to vest ownership of the lease in the defendants.

While it is clear the quoted portion of the assignment agreement was inserted for the protection and security of the assignees and their heirs and assigns against unlawful termination of the lease by the neglect, failure or inability of its owners to proceed with continuous production, the record manifests that events giving rise to that contingency never existed, hence, the first ground for forfeiture did not occur. Cities Service did not unlawfully terminate the lease, or fail or refuse to carry out its terms; there was no collusion or bad faith; the lessee operated the lease for 39 years producing vast quantities of oil and released it only when it had reached its economic limit of production. However, prior to filing the release, Cities Service notified the defendants that it ceased production only because oil could no longer be produced economically. The defendants did not allege or prove, and here make no claim, that the lessee wrongfully terminated production; on the contrary, they stipulated it was desirable for Cities Service to do so. In short, while they contend the lease was forfeited, their own admissions clearly establish that the lessee did not fail to carry out the express and implied covenants of the lease as a careful and prudent operator. Consequently, the lease was not forfeited but simply expired by reason of cessation of production. This court has consistently held that where, as here, the primary term of an oil and gas lease has expired and its terms are being continued pursuant to the "thereafter clause" by reason of continued production of oil or gas, all rights under it terminate when production in paying quantities ceases (*Caylor v. Oil Co.* 110 Kan. 224, 226, 203

Pac. 735; *Warner v. Oil & Gas Co.* 114 Kan. 118, 217 Pac. 288; *Kahm v. Arkansas River Gas Co.* 122 Kan. 786, 253 Pac. 563; *Wilson v. Holm*, 164 Kan. 229, 237, 188 P. 2d 899; *Tate v. Stanolind Oil & Gas Co.*, 172 Kan. 351, 354, 240 P. 2d 465; *Baker v. Huffman*, 176 Kan. 554, 557, 271 P. 2d 276; *Wagner v. Sunray Mid-Continent Oil Co.* 182 Kan. 81, 318 P. 2d 1039; Mills and Willingham, Law of Oil and Gas, p. 121, § 75; 2 Summers on Oil and Gas, Perm. ed. 173, § 305; 24 Am. Jur. Gas and Oil, p. 585, § 77). Applying this rule to the instant case, the rights of all parties under the McKnab lease, including the defendants, terminated in May, 1955, by reason of cessation of production.

We have carefully examined the record and find no error. The judgment of the trial court is affirmed.

WERTZ, J., dissents.

ROBB, J., not participating.