Clifford G. ROBINSON, Individually and as Executor of the Estate of Florence M. Ely, Deceased, Plaintiff,

v.

CONTINENTAL OIL COMPANY, a Delaware corporation, and Homestake Oil and Gas Company, an Oklahoma corporation, Defendants.

Civ. A. No. W-3247.

United States District Court
D. Kansas.

Feb. 28, 1966.

---

Ronald D. Albright, Anthony, Kan., for plaintiff.

Foulston, Siefkin, Powers, Smith & Eberhardt, Wichita, Kan., and John Wimbish and Richard R. Linn, Oklahoma City, Okl., for defendants.

## MEMORANDUM OF DECISION

WESLEY E. BROWN, District Judge.

This removed suit to cancel an oil and gas lease on the grounds that it expired by its own terms or that it expired by breach of an implied covenant to develop was tried to the court.

The court has jurisdiction of the parties and of the subject matter. Most of the facts are stipulated at length and in detail in the Pre-Trial Order. Such stipulations are approved and adopted by the court and will not set forth here in any great length.

On January 31, 1964 Continental assigned (and recorded) oil and gas rights below the base of the Stalnaker formation under the W/2 of the SE/4 of Section 30 to defendant Homestake. The contentions and issues at bar really only involve actions or inaction on the part of Continental, however.

Plaintiff has executed top leases on the land in question to another party who in turn assigned some of them to a second party. Both such parties have entered voluntary appearances herein and have agreed to be bound by this court's judgment. [Pretrial Order, p. 9, Doc. # 35].

The only factual issue to be determined in this case was stated in ¶ 7 of the Pre-Trial Order as follows:

"At what date did Continental, acting as a prudent operator, finally determine that it had a commercial gas well from which it could produce gas in marketable quantities?"

At the close of the trial, we announced from the bench our finding of fact that Continental, acting as a prudent operator finally determined that it had a commercial gas well from which it could produce gas in marketable quantities on October 8, 1963.

It was stipulated that delay rentals necessary to keep the lease alive during its primary term until October 13, 1963 were properly paid. It was also stipulated that Continental executed and recorded an affidavit of production on October 11, 1963. It is also agreed that Continental tendered shut-in royalties to plaintiff on October 1, 1964. Plaintiff refused the tender and thereafter Continental tendered the shut-in payments into this court for the account of plaintiff on October 8, 1964.

It is also stipulated that plaintiff executed topleases on the land in question on November 4, 1963. Further, neither of the Ely's plaintiff's predecessors ever made demand or request for development of the oil and gas leasehold in question. It is further agreed that no claim was ever made that defendant breached any implied covenant to develop the lease until plaintiff's motion to permit amendment of pleadings to allege such breach

was filed in this court after the commencement of this suit.

Completion of the gas well on pooled acreage within the primary term kept the lease alive beyond the primary term. Continental as lessee was entitled to a reasonable time in which to locate a market for the gas. Continental expended money and effort in obtaining a connection to the only market pipe in the area. Tate v. Stanolind Oil & Gas Co., 172 Kan. 351, 240 P.2d 465 (1952); Christianson v. Champlin Refining Co., 169 F.2d 207 (10th Cir. 1948).

Under the lease at bar, we are of the opinion that shut-in payments were not due until the end of the year during which gas was not sold or used. In other words, Continental had at least until October 8, 1964 to pay or tender the shut-in. The Tenth Circuit, in a case involving basically the same shut-in clause, stated that:

"The shut-in royalties were to be paid 'at the end of each year during which such gas is not sold or used.' Clearly the one-year period for remittance of shut-in payments did not begin to run until a particular well was capable of producing gas in marketable quantities, which would be when it was completed. Therefore, we conclude that the payments were timely." Carlisle v. United Producing Co., 278 F.2d 893, 895 (10th Cir. 1960).

Further, we conclude that while Continental made a timely tender of shut-in payments, it was under no obligation to make such tender because defendant's title was at the time under attack by plaintiff as lessor. The execution of top leases by plaintiff on November 8, 1963 was in our opinion a challenge of Continental's title. Twyford v. Whitchurch, 132 F.2d 819 (10th Cir. 1942). See also Hamilton v. Empire Gas & Fuel Co., 297 F. 422 (8th Cir. 1924) (up from the District of Kansas). As stated earlier, plaintiff, by executing top leases was attacking Continental's title. Further this suit was filed in state court in July of 1964 and removed to this court in August of 1964, prior to the due date of the shut-in payments.

We therefore conclude that the lease in question did not expire of its own terms.

Plaintiff also argues that his lease expired because shut-in payments were not timely made to the Heacock royalty owners. [The gas well in question is located on the Heacock lease— which is part of the pooled acreage.] We feel the argument is without merit. It is stipulated that delay rentals necessary to keep the Heacock lease in full force during its primary term were paid; that correct shut-in payments were mailed by Continental to the six Heacock royalty owners on October 1, 1964 and received by them on October 2, 1964; that five of the six Heacock royalty owners have cashed such checks; that the sixth retained the check without cashing it but did not return it to Continental; and that the Heacocks themselves, as well as Continental, recognize that the Heacock lease is currently in full force and effect. [Pre-Trial Order, ¶ 9].

Further, we hold that Continental has not breached any implied covenant to develop. Since Continental has been under no obligation to carry out express or implied conditions of the lease during an attack on its title [see supra], any implied covenant must have been breached prior to November 4, 1963, when plaintiff executed the top leases. It is stipulated [Pre-Trial Order, p. 8] that during the lives of the Elys [plaintiff's predecessors] there was no geological information warranting a prudent operator in drilling and developing the leasehold in question. It is also stipulated that Mrs. Ely died in 1962. And we have found that the well on the pooled acreage was completed on October 8, 1963.

It is also stipulated that remaining leasehold acreage involved—not within the unit—is a noncontiguous block of land located one to two miles northeast of the unit; that there are no producing wells offsetting such remaining acreage; that no geology is known to exist in that

area which would warrant a prudent operator to drill an exploratory well in such wildcat acreage; and that further studies are being made and information is being collected which could be used as an aid in determining in the future whether further development might be warranted. [Pre-Trial Order, p. 8].

Under such facts we think it is clear that Continental has not breached any implied covenant to develop. Plaintiff has failed to prove that Continental has not acted with reasonable diligence under the undisputed facts of this case.

 In addition, it is stipulated that no demand or claim of breached implied covenants were made prior to the filing of this suit. [Pre-Trial Order, p. 8A]. In an equity suit to cancel a lease, we feel that such a demand is necessary before a court will order a forfeiture. Cf. Cowman v. Phillips Petroleum Co., 142 Kan. 762, 767, 51 P.2d 988 (1935).

 In view of our holdings above we feel we need not reach the question of whether plaintiff's publication of notice and filing of an affidavit of nonproduction without giving actual notice to defendants when plaintiff and his attorney knew defendants' mailing addresses forfeited the lease. This issue would involve constitutional questions under the familiar concepts of Mullan v. Central Hanover Bank & Trust Co., 339 U.S. 306, 70 S.Ct. 652, 94 L.Ed. 865 and Walker v. City of Hutchinson, Kan., 352 U.S. 112, 77 S.Ct. 200, 1 L.Ed.2d 178. Courts do not ordinarily reach or consider constitutional questions unless necessary to a decision. We do not feel the constitutional questions are necessary to a decision in the case at bar in view of our holdings supra.

We therefore hold that the lease in question is in full force and effect and that plaintiff is not entitled to an order cancelling same.

Prevailing counsel shall prepare, circulate and submit an appropriate judgment consistent with the views expressed herein.

The foregoing Memorandum contains the findings of fact and conclusions of law required by Fed.R.Civ.P. 52 thought by the court to be necessary.