(648 P.2d 279)
No. 53,927

WALTER J. MEDLIN and RUTH M. MEDLIN, *Appellees,* v. MAINLINE U.S.A., INC., *Appellant.*

Opinion filed July 29, 1982.

*Walker A. Hendrix,* of Anderson, Byrd & Richeson, of Ottawa, for appellant.
*Craig S. Powell,* of McQueary & Powell, of Osawatomie, for appellees.

Before SPENCER, P.J., ABBOTT and SWINEHART, JJ.

ABBOTT, J.: This was an action by plaintiffs, Walter J. and Ruth M. Medlin, to quiet title to eighty acres of land on which the defendant, Mainline U.S.A., Inc., claimed to hold a valid oil and gas lease. Judgment was rendered quieting plaintiffs' title and Mainline U.S.A. appeals.

Mainline contends (1) that the trial court had no jurisdiction because the plaintiffs did not make written demand of the defendant to release the lease of record pursuant to K.S.A. 55-206; and, (2) that the issue before the trial court was whether defendant had complied with the commencement clause of the lease and the trial court, in deciding that issue, used for its definition of "found in paying quantities" the one that applies to the habendum clause, which Mainline contends is different in meaning when applied to the commencement clause.

Plaintiffs entered into two separate oil and gas leases on August 13, 1979, for a term of one year, and as long thereafter as oil or gas, or either of them, is produced from the land by the lessee. The two leases were subsequently assigned to Mainline, which drilled one well on August 1, 1980. A second well was drilled on the property on August 4, 1980. Both wells were shallow (446 and 403 feet). It was intended that the second well be drilled on the

second lease, but it was drilled by mistake on the lease in question. Mainline makes no claim the second lease remains in being, and it was not included in plaintiffs' quiet title action.

Prior to August 13, 1980, both wells were cased through the pay zone and cemented in the hole. A core sample was taken and submitted to a laboratory for analysis. Unless extended by the commencement clause, the lease expired on August 13, 1980. The commencement clause provides:

"If the lessee shall commence to drill a well within the term of this lease or any extension thereof, the lessee shall have the right to drill such well to completion with reasonable diligence and dispatch, and if oil or gas, or either of them, be found in paying quantities, this lease shall continue and be in force with like effect as if such well had been completed within the term of years herein first mentioned."

On August 19, 1980, both wells were logged and perforated. The final report containing the analysis of the core sample was received by the defendant on October 17, 1980. It contained information on the porosity and permeability of the oil reservoir on the premises and indicated that the wells were capable of economic production. The trial court found that a preliminary report could have been obtained in three days.

Plaintiffs filed an affidavit of nonproduction in the office of the Register of Deeds of Miami County, Kansas, on January 7, 1981. Mainline received a copy at its Canadian headquarters on February 12, 1981. On February 17, 1981, Mainline caused the two wells to be "fractured" (evidence was introduced that fracturing had been scheduled for February 10, 1981, but postponed because of snow). At that time, plaintiffs apparently blocked access to the land and commenced this quiet title action on February 18, 1981.

The trial court heard evidence and found that under normal conditions a well can be placed into production within forty-five days after it has been drilled; that the wells drilled by defendant cannot produce oil and gas until lead lines are run to the well, pump jacks installed, electricity made available, lines buried and a tank battery installed; and that all of the work could be done in one week, barring inclement weather.

Although requested by Mainline to find that it was acting with "reasonable diligence and dispatch in this case," the trial court found that "the activities of the defendant were not sufficient to prevent the automatic cancellation of the lease."

We first consider defendant's claim that the trial court was without jurisdiction because plaintiffs did not make demand at least twenty days before bringing their action that the lease be released of record pursuant to K.S.A. 55-206. We agree with plaintiffs that the procedure pursuant to K.S.A. 55-201 *et seq.* is permissive. A landowner seeking to quiet title may commence an action against a lessee claiming a valid oil, gas or other mineral lease without making demand, pursuant to K.S.A. 55-206, if the landowner does not seek damages or attorney fees as authorized by K.S.A. 55-201 *et seq.*

In *Kahm v. Arkansas River Gas Co.*, 122 Kan. 786, 253 Pac. 563 (1927), plaintiffs commenced an action to cancel an oil and gas lease and quiet title, but did not seek damages or attorney fees. The Supreme Court affirmed the trial court, which had decreed that the lease be canceled and the landowner's title quieted. The Supreme Court said:

"Another [of defendant's] objection[s] to the judgment is that plaintiffs failed to give notice to defendant of their intention to institute this action. The objection is not good; it was not pleaded; and plaintiffs' claim for damages under the statute which requires the giving of such notice (R.S. 55-202, 55-206) was withdrawn. Notice was not a prerequisite to the commencement of this action. (*Elliott v. Oil Co.*, [106 Kan. 248], Syl. ¶¶ 1, 2.)" 122 Kan. at 792.

See also *Mollohan v. Patton,* 110 Kan. 663, 202 Pac. 616 (1921), and *Elliott v. Oil Co.,* 106 Kan. 248, 187 Pac. 692 (1920).

We deem *Nelson v. Hedges,* 5 Kan. App. 2d 547, 619 P.2d 1174, *rev. denied* 229 Kan. 670 (1980) to be not in conflict with our decision in this case. The issue before this court in *Nelson* was whether plaintiffs were entitled to statutory damages and attorney fees. The defendants conceded the lease in issue was void ab initio and the lease was canceled. We find nothing in the language of *Nelson* that would make the demand provisions of K.S.A. 55-201 through 55-206 a prerequisite to commencing a quiet title action. We deem the demand provisions of K.S.A. 55-206 to be a prerequisite to a quiet title action only when damages or attorney fees are requested.

Mainline next argues that it commenced the well within the primary term and the well was completed thereafter with reasonable diligence and dispatch; that rather than applying the phrase "found in paying quantities" in the context of the drilling clause, the trial court applied it in the context of the habendum clause which requires actual production. The trial court found that the

well was capable of economic production. There is ample evidence in the record to support that finding, and neither party contends otherwise. The trial court relied on *Tate v. Stanolind Oil & Gas Co.,* 172 Kan. 351, 240 P.2d 465 (1952). In *Tate,* landowners sought to quiet their title to land on which the defendant claimed to hold a valid oil and gas lease. That oil and gas lease had commencement and habendum clauses identical to those in the lease before us. The Supreme Court in considering the clauses said:

"Obviously if on completion of drilling operations oil or gas is found in paying quantities the lessee, under this clause, is not expressly required to produce or market the oil or gas immediately. And, of course, that might be wholly impossible. *He would, however, be required to do so within a reasonable time."* 172 Kan. at 355-56 (emphasis supplied).

As we view the trial judge's findings of fact and conclusions of law, he found that Mainline did not produce oil or gas within a reasonable time. We deem it unnecessary to determine at what stage a well is completed within the meaning of the drilling clause, because a lease expires in any event if oil or gas is not actually produced with reasonable diligence and dispatch. The trial court found that all of the work necessary to place the well in production could have been done in a week's time, and Mainline's failure to put the well in production was inexcusable.

As stressed in *Tate,* what constitutes production and marketing within a reasonable time must be left to the factfinder in each case. Substantial competent evidence exists to support the trial court's findings, and we are bound by those just as we are bound by the Supreme Court decisions that set out law applicable to the facts before us.

Affirmed.